DISTRICT GRAND LODGE NO. 25 GRAND UNITED ORDER OF ODD FELLOWS V. JACK JONES ET AL.

No. 7757. Decided February 18, 1942.
Rehearing overruled April 8, 1942.
(160 S. W., 2d Series, 915.)

*W. J. Durham,* of Sherman, *Cole, Patterson & Cole,* and *Jesse W. McDaniel,* of Houston, *Barney A. Garrett,* of Waco, *J. R. Beck,* of Beaumont, and *Powell, Rauhut & Gideon,* of Austin, for appellant.

Immediately upon the dissolution of the local lodge, the title to the property in question, both legal and equitable, vested in the grand lodge. Brown v. St. Mary's Temple, 127 S. W. (2d) 531; Dallas Land Co. v. Garrett, 276 S. W. 471; Knights of KuKlux Klan v. First Natl. Bank, 254 Ill. App. 264; Ross v. Tide Water Oil Co., 136 Texas 66, 145 S. W. (2d) 1089; Manning v. San Antonio Club, 63 Texas 166.

*D. E. O'Fiel and W. R. Blain,* both of Beaumont, for appellees.

In a trespass to try title proceeding the plaintiff must recover upon the strength of his own title, and the plaintiffs in

this case having failed to show title in itself, it was not error to rended judgment that it take nothing by its suit. The plaintiff not having become a body corporate under the provisions of Chapter Nine, Title Thirty-Two, (Articles 1399 to 1409) of the Revised Statutes of Texas is entitled to none of the benefits of the provision of that chapter, which relates to the manner in which property may be acquired by organizations mentioned therein. It having been incorporated under chapter eight of title seventy-eight (Article 4820) of the Revised Statutes. Stringfellow v. Loyal Tabernacle No. 48, 291 S. W. 1115; Wells v. Monihan, 129 N. Y. 161, 29 N. E. 232; Austin v. Searing, 16 N. Y. 112, 69 Am. Dec. 665.

*Alpha & Brunson*, of Houston, and *Clark, Craig, Burns & Weddell*, of Fort Worth, filed brief as amicus curiae.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is an action in trespass to try title originally filed by Gus Coleman and Isiah White, suing as representatives of, and for the benefit of, all former members of the Grand United Order of Odd Fellows, Port Arthur Lodge No. 7951 (hereinafter referred to as "Local Lodge"), "save and except the defendants, Jack Jones, Alec Joseph, Grant Insull, Ameal Burke and Ben Custer, as representatives of some twenty-six (26) men including themselves." Later a plea in intervention was filed, in trespass to try title, by the District Grand Lodge No. 25 Grand United Order of Odd Fellows, Houston, Texas, and its Endowment and Burial Department Grand United Order of Odd Fellows and Ruthites of Texas (hereinafter referred to as "Grand Lodge"). Thereupon original plaintiffs, Coleman and White, nonsuited and the case proceeded with Grand Lodge as plaintiff and Jack Jones and others (being "all of the present qualified and paid up members" of Local Lodge) as defendants. Trial was to the Court and judgment was rendered for the defendants. Grand Lodge appealed to the Court of Civil Appeals, at Beaumont, and the case is now before us upon certified questions from that tribunal.

The case was tried on an agreed statement of facts from which it appears that Grand Lodge is a voluntary, non-profit, beneficial association with membership limited to a secret fraternity carried on under a lodge system and under a representative form of government in that its constitution and by-laws

and those of its subordinate, or local, lodges are adopted or amended at stated sessions of Grand Lodge made up of delegates from the local lodges. In other words, it is a fraternal benefit society under the provisions of Art. 4820 et seq., R. S. 1925, but has no other status, corporate or otherwise. It was organized in 1890. In 1908 it secured from the Board of Insurance Commissioners of Texas a certificate of authorization to do business as a fraternal benefit society and has renewed the same annually since.

Local Lodge was granted dispensation as a subordinate lodge before its acquisition of the property in suit and continued as such until June 25, 1936, when it became "defunct" with Grand Lodge and made to the latter its final report, since which time it has paid no membership dues or assessments either to Grand Lodge or to the national organization, although demand was thereafter made by Grand Lodge that the same be paid.

Three lots in the City of Port Arthur are involved. One was originally acquired in 1909 and paid for by contributions of ten dollars each by the members of Local Lodge, their identity being, however, now unknown. A second was acquired in 1920 and was a gift but for the assumption of outstanding vendor's lien notes, which were subsequently paid by rentals from the property. The third was acquired in 1920 and was paid for with contributions from members of Local Lodge and the proceeds of suppers and other entertainments. No funds of Grand Lodge or of the national organization went, either directly or indirectly, into the purchase of said lots or into making improvements thereon. Grand Lodge did not direct the purchase of any of said lots by levying assessments upon the members of Local Lodge for such purpose, consequently there is no record that the members of Local Lodge ever voted on any such assessments. In each instance, however, the deed was executed to named members of Local Lodge *as trustees of said Local Lodge and to their successors in trust for said lodge.*

On October 7, 1936, Mike Alexander, Ben Custer and Robert Spooner, describing themselves as "the duly elected and qualified trustees" of Local Lodge executed to Ameal Alfred and thirty-three others (including themselves), as grantees, a general warranty deed conveying the said three lots, in consideration of $10.00 paid and in further consideration "that the grantees herein are all of the present qualified and paid up

members of Port Arthur Lodge No. 7951, * *, and which lodge is contemplated to be dissolved and such members being the owners of the equitable title to the hereinafter described property."

The constitution and by-laws of Grand Lodge contain certain provisions in Article 10, Sections 1, 2, 4, 6, 7 and 8, pertinent to the issues of this case, as follows:

"Sec. 1. The title to all property, real, personal or mixed acquired by any subordinate lodge or Household of Ruth, by purchase, gift, devise or otherwise, shall be acquired by such subordinate lodge or Household of Ruth as trustee for the District Grand Lodge No. 25, Grand United Order of Odd Fellows; and, the same shall be held in trust by such subordinate lodge or Household of Ruth for the benefit of the District Grand Lodge, so long as such subordinate lodge or Household of Ruth is alive and has complied with the rules, regulations and laws of the District Grand Lodge."

"Sec. 2. No property held by any subordinate lodge or Household of Ruth of the District Grand Lodge No. 25, Grand United Order of Odd Fellows shall ever be mortgaged, sold, or encumbered in any manner, by the officers or members of such subordinate lodge, or Household of Ruth, without the written permission and consent of the Grand Master of the District Grand Lodge."

"Sec. 4. When any subordinate lodge or Household of Ruth or members thereof shall withdraw or rebel against the rules and regulations of the District Grand Lodge or when such subordinate lodge or Household of Ruth shall become defunct, dissolved, demise, cease to operate, withdraw or seceded from the grand lodge body, or its charter revoked for any cause, under such condition such subordinate lodge or Household of Ruth breaches the trust to retain the property of the subordinate lodge or Household of Ruth, and all property of every character or kind, held in trust by such local lodge, or Household of Ruth shall be taken over, and re-possessed by the District Grand Lodge; and, all members who have severed their connection with the subordinate and District Grand Lodge shall have no right to use or enjoy said property in any manner, or the revenues and rents derived therefrom; and, upon a member severing his connection with either the subordinate or District Grand Lodge, such member loses his right to use the

property held by the subordinate lodge, or any property of the District Grand Lodge."

"Sec. 6. The District Grand Lodge may, through its members, purchase home sites for its subordinate bodies, by levying assessments upon the membership of subordinate bodies for such purposes, and the members of such subordinate bodies may be permitted to vote upon such assessment and determine the amount and how the same shall be paid, whether in monthly or annual installments; but no assessments shall be valid for such purposes until the same has been approved by the District Grand Master. And any member of said subordinate lodge failing to pay such assessments may be suspended from both the subordinate and District Grand Lodge until the same has been paid. And the Endowment Secretary may refuse to accept the assessments, dues and taxes due the District Grand Lodge until such assessments shall have been paid."

"Sec. 7. A subordinate lodge shall be deemed to have demised, become dissolved, or defunct, whenever its members shall withdraw from the subordinate lodge or when ever the members fail and refuse to pay the taxes, dues and assessments, levied or made on such members by the District Grand Lodge, or whenever the members of such subordinate lodge drop below the number of seven members, or whenever the members of such subordinate lodge refuse to obey the laws of the District Grand Lodge or its mandate; and it shall not be necessary that the charter or warrant held by such subordinate lodge be actually withdrawn from such subordinate lodge before the same becomes defunct or dissolved. The Endowment Secretary shall note on his record the date such subordinate lodge or Household of Ruth became defunct, dissolved, withdrawn, or the date of its demise, or the date its charter was revoked."

"Sec. 8. When any subordinate lodge or Household of Ruth shall, from any cause, demise or become defunct, dissolved, or its members withdrawn from the District Grand Lodge or its charter revoked for any purpose, then the fee to all and whatsoever property held in the name of such subordinate body or its officer, shall vest absolutely in the District Grand Lodge, the same to be managed, controlled and disposed of by sale or otherwise by the District Grand Master and the District Endowment Secretary, on such terms as such officers may deem best, and to this and the District Grand Master in person or by duty, shall take immediate and absolute possession of all

property and effects of said subordinate lodge and the proceeds arising from the sale of any such property, together with whatever money such subordinate lodge has to its credit, and the same shall be placed to the credit of the District Grand Lodge funds, on the books of the Grand Treasurer, which amount shall be used for the general purpose of the District Grand Lodge."

These rules were in effect in 1908 and no change or alteration has been made in them since.

Under the foregoing attempted concise statement of the relevant facts we have from the Honorable Court of Civil Appeals the following certified questions:

"Question No. 1: Did appellant's constitution create in it an express trust in the property in controversy?"

"Question No. 1-a. If you should answer question No. 1 to the effect that appellant's constitution did not create in it an express trust in the property in controversy, then we submit this question: Did the legal title to the property in controversy, at the time of its acquisition, vest in appellant under the provisions of Section 1 of Article 10 of its constitution and by-laws?

"Question No. 2. On the facts certified, did the legal title to the property in controversy, at the time of its acquisition, vest in subordinate lodge No. 7951?

"Question No. 2a. If you should answer question No. 2 to the effect that the legal title to the property in controversy, at the time of its acquisition, vested in subordinate lodge No. 7951, was the equitable title to the property in appellant?

"Question No. 3. When subordinate lodge No. 7951 became defunct, did the title to the property in controversy, legal or equitable, vest in appellant?

"Question No. 4. On the facts certified to you above, particularly the facts of the 14th paragraph of the agreed statement of facts, are we in error in holding that the property in controversy "was not acquired in any manner provided for by appellant's constitution and by-laws?"

"Question No. 5. Under appellant's constitution and by-laws, did lodge No. 7951 have the right to acquire distinct property

rights in its own name and for its own use and benefit, on the consideration expressed in the 14th paragraph of the agreed statements of facts, as certified above?

"Question No. 6. (a) If appellant's constitution and by-laws should be construed as denying lodge No. 7951 the right to acquire the property in controversy, on the consideration and in the manner stipulated in section 14 of the agreed statement of facts as certified to you above, in its own name and for its own use and benefit and free of all interest, claim, right, title and control by appellant, under such construction would the constitution and by-laws on this particular point be contrary to public policy; (b) and would the fact that subordinate lodge No. 7951 assented to the by-laws at the time of its admission to the association relieve the by-laws of the assignment that they are contrary to public policy?

"Question No. 7. (a) When subordinate lodge No. 7951 became defunct, did the lodge lose its right, title, and interest to the property in controversy, if any such interest it had? (b) If the constituent members had any title or right to the property did they lose this right?"

### OPINION.

These questions, considered together, present one fundamental question, namely, whether the property held by a defunct local fraternal lodge goes to its members or to the grand lodge of which the local lodge is a constituent member. We recognize that there is some diversity of opinion in our American jurisprudence as to the correct answer. Those authorities holding that such property goes to the grand lodge usually are but giving effect to rules of the order so providing, while those holding that the same goes to the members of the defunct local lodge proceed on the hypothesis that any rule giving the property to the grand lodge is unconstitutional and void as a taking of property without due process of law. Some authorities allowing such forfeiture in cases of voluntary dissolution of the local lodge deny it in cases wherein the local body becomes defunct by action of the grand lodge, as by a forfeiture of charter. A fairly comprehensive statement of these divergent views appears in 94 A. L. R., p. 646, note IV.

■ By reference to the above quoted sections of Art. 10, of the constitution and by-laws of Grand Lodge, it will be observed that they provide that all property real, personal or mixed

acquired by any subordinate lodge shall be held in trust for Grand Lodge by the subordinate lodge so long as the latter is alive and complies with the regulations of the former (sec. 1) and that when any subordinate lodge shall become defunct or cease to operate all property held in trust by it shall be taken over by grand lodge (sec. 4) and the fee to all property held in the name of the subordinate lodge *shall vest absolutely in Grand Lodge* (sec. 8). That these provisions are broad enough to include the three lots in suit cannot be seriously questioned. Likewise, it cannot be disputed that the superior equitable title to said lots was vested in Local Lodge because the several deeds thereto were executed to the grantees (members of Local Lodge) *as trustees for said local lodge and to their successors in trust for said lodge.* In fact, this last proposition seems to have been assumed by all parties.

If these provisions are not void as contrary to public policy they settle this case because they became a part of the contract entered into by the defendants when they became members of the order and whatever rights defendants had in the lots in controversy were merely incidental to their membership and terminated absolutely with such membership. Lone Star Lodge v. Cole, 62 Texas Civ. App., 500, 131 S. W. 1180 (er. ref.). Such rules have been declared to be articles of agreement to which all members are parties. Manning v. San Antonio Club, 63 Texas 166.

■ We do not think these provisions are contrary to public policy. Fundamental public policy is declared in the Constitution. If not there declared then public policy is to be looked for in legislative enactments which are conclusive unless they contravene some provision of the Constitution. 11 Am. Jur. sec. 139. Therefore, if we have a statute on the question before us it follows that we have a statement of public policy with respect thereto, unless such statute be unconstitutional. Art. 1403, R. S. 1925, is such a statute. It is a part of Chapter 9, which relates to the *incorporation* of the grand lodges of the Masons, Odd Fellows and other orders organized for charitable or benevolent purposes and provides:

"Upon the demise of any subordinate body so incorporated, all property and rights existing in such subordinate body shall pass to, and vest in, the grand lodge to which it was attached, subject to the payment of all debts due by such subordinate body."

This language is clear and unequivocal and plainly states what is to become of the property of a defunct local lodge.

■ The defendants insist that said statute cannot be regarded as a declaration of public policy in this case because it relates to beneficial orders that incorporate, whereas Grand Lodge was not incorporated. We are not impressed by this suggestion. Grand Lodge has had continuous existence as a fraternal benefit society in Texas since at least 1890 and its status has been recognized and protected by the statutes of Texas from the original enactment in 1899 to the present. See Art. 4820 et seq., R. S. 1925, relating to fraternal benefit societies. Its aims and purposes are the same as that of an Odd Fellows Grand Lodge that is incorporated under the provisions of Chapter 9, R. S. 1925, supra, as seems to be clearly recognized by Art. 4839, reading as follows:

"Any society now engaged in transacting business in this State may exercise all of the rights conferred hereby, and all of the rights, powers and privileges now exercised or possessed by it under its charter or articles of incorporation not inconsistent with this chapter, *if incorporated; or if it be a voluntary association, it may incorporate hereunder. But no society already organized shall be required to re-incorporate hereunder.*" (Italics ours.)

This statute plainly manifests the legislative intent that a fraternal benefit society already in being should be regarded as an entity and protected by law, although it should not incorporate, just as one that elected to incorporate would be. So we perceive no sound reason why Art. 1403, supra, applying to incorporated fraternal benefit societies, should not be considered as applying equally to such societies that are not incorporated but which have complied with all legal requirements and whose entity existence is fully recognized by Arts. 4820 et seq., supra, and we so hold. Obviously, we are not deciding that this article has the effect to pass title of the properties of a defunct unincorporated local benefit lodge to its unincorporated grand lodge. That question is not before us. We refer to it merely as a legislative statement of the public policy underlying the matters that are presented in the certified questions. See 11 Am. Jur., p. 814.

But it is contended that Art. 1403, supra, cannot be looked to as a declaration of public policy because it is unconstitutional

in that it permits a taking or confiscation of private property without due process of law. We do not think it has that effect. In the very nature of things the membership in fraternal benefit organization is ever shifting and changing because of death, voluntary withdrawals, forfeiture from failure to pay dues, and the like. Local lodges come into being, not as independent organizations existing solely for the benefit of their members, but as constituents of the larger organization, the grand lodge, organized for specific purposes, most of which can be accomplished only through subordinate bodies, the local lodges. They come into being to aid in the accomplishment of these purposes and then some of them pass away like their members before them. What is to become of their property? Departed members who contributed to its accumulation expected no interest in it. They have none. Membership in the lodge at the time of its death certainly should give the surviving member no individual interest in the lodge's property because he joined charged with notice of the statute declaring that whatever he contributes to the local lodge should, in the event of its death, pass to and vest in the central state organization. The property so acquired by the local lodge becomes impressed with the group purpose of a fraternal benefit society. Upon demise of such lodge the way to keep it so impressed is certainly not by deeding it to the surviving members to enjoy according to their individual desires, but can be achieved only by giving it to the central state organization, the grand lodge, for disposition in accordance with its rules and the general law governing it. The statute in question accomplishes that. See Minor v. St. John's Union Grand Lodge, 62 Texas Civ. App. 100, 130 S. W. 893 (er. ref.).

Moreover, every individual joining a fraternal order referred to in the statute and charged with notice of the principle therein stated must be regarded as having impliedly contracted with his fellow members and the local and grand lodge that whatever he contributes to property acquired by the local will, upon demise of that body, become vested in the grand lodge. Such implied contract does not appear adversely to affect the public welfare; it is not forbidden by law; certainly its consideration is not immoral. Hogston v. Bell, 185 Ind. 536, 112 N. E. 883. So, we hold that the statute is not unconstitutional as taking private property without due process of law. See Ross v. Cutter (Civ. App.), 223 S. W. 273; 16 C. J. S., sec. 154.

It is also vigorously urged that the above quoted provisions of Grand Lodge's constitution and by-laws are void for the

same reasons. We overrule that contention also. As stated in Manning v. San Antonio Club, supra, with reference to Section 19, of the Bill of Rights:

"These guaranties were mainly intended to protect the citizen against oppression by the government, but they do not protect him against himself or against his own agreements. When, therefore, persons enter into organizations for purposes of social intercourse or pleasure or amusement, and lay down rules for their government, these must form the measure of their rights in the premises, and it is vain to appeal to the Bill of Rights against their own agreements."

It is generally held that the constitution and by-laws of a voluntary association, whether incorporated or not, are controlling as to its internal management. Brotherhood of Ry. Trainmen v. Williams 211 Ky. 638, 277 S. W: 500, and authorities cited. What shall become of its property concerns only the members of any such association and when that question is determined in its constitution and by-laws, to which all members joining it must subscribe, there can be no public policy requiring the courts to make a contrary disposition.

It must be remembered that we are not dealing here with a local lodge whose permit to exist has been cancelled, wrongully or otherwise, by the grand lodge. On the contrary, it is agreed that Local Lodge became defunct and made a last report and quit paying taxes, dues and assessments made on its members by Grand Lodge. In fact, the deed under which defendants assert title recites it was executed in contemplation of the dissolution of Local Lodge. So we are considering the relative rights in the property of a local lodge, voluntarily defunct or demised, as between its surviving members and the grand lodge, and we see no violation of public policy in permitting those rights to be determined by rules of the order to which all defendants, as members, solemly subscribed. They made their own contract and it is not for the courts to relieve them of its effects.

American Legion, etc., v. Big Spring Veterans, Inc., 73 S. W. (2d) 594, is not opposed to the conclusions we here express. In that case the defendant was incorporated, primarily to acquire title to the property in controversy, and its charter had not been revoked at the time of trial and the only by-law that might be construed as working any forfeiture of its property

rights expressly applied only in the event of revocation of its charter. As pointed out by Judge Hickman, the charters, by-laws and constitutions of both the national organization and the state departments were practically silent on the question of property rights. "The national and state organizations undoubtedly could have prescribed rules and regulations for the government of the local post, and *could have made provisions touching property rights, but,* according to the record before us, *they have not done so. No specific trusts or limitations on the title were placed upon the property in controversy."* (Italics ours.) Whereas, we deal here with a local organization that is defunct and that did have specific trusts and limitations placed by the by-laws on the property it acquired.

The defendants urge that it is possible for a local lodge to acquire some property that does not become impressed with the group purpose of a fraternal benefit society and that such property, on demise of the local lodge, vests in the members. It is argued that, since section 6, above quoted, provides that Grand Lodge may, through its members, purchase home sites for its subordinate bodies, by levying assessments upon its members for such purpose, such method presents the only way by which a local lodge can acquire property that becomes impressed with the organization purpose and that reverts to the Grand Lodge upon demise of the local lodge. While we realize that sometimes *may* is construed to mean shall, we believe that, as used in said section 6, the word connotes merely permission because it does not appear that there is any general public interest in having the permitted purchases made. See 39 Tex. Jur., p. 37, and authorities cited. We believe, therefore, that said section 6 merely provides one way by which the local lodge may acquire a home site, namely, by assessment of its members by action of the Grand Lodge followed by approval on vote of the members themselves. In other words, such method is not exclusive and a local lodge may acquire property in other ways just as was done here. We think this is made clear by the language of section 1, supra, providing that the title to *all property, real, personal or mixed acquired by any subordinate lodge by purchase, gift, devise or otherwise* shall be acquired by such subordinate lodge as trustee for the Grand Lodge. By reference to the several sections of Grand Lodge's constitutions and by-laws it seems to be clearly provided (1) that Local Lodge could acquire property not only by buying it under the terms of section 6 but also by purchasing it under other conditions or by gift, devise or in any other manner and (2) that when so

acquired it became impressed with the purposes of the organization and held in trust for Grand Lodge. This, likewise, is part and parcel of the contract the defendants made for themselves when they became members of the order.

From what has been said it follows that we answer certified questions numbers 1, 3, 4, 7(a) and 7(b) in the affirmative; numbers 5 and 6(a) in the negative and number 6(b) in the affirmative. To certified questions numbers 2 and 2(a) we answer that the naked legal title to the property in controversy vested in the trustees named in the several deeds and their successors and that the equitable title vested in Local Lodge and Grand Lodge, with said title in the former subject to forfeiture to the latter under its constitution and by-laws above quoted.

Opinion adopted by the Supreme Court February 18, 1942.

Rehearing overruled April 8, 1942.