FRIERSON et al. v. MODERN MUT. HEALTH & ACCIDENT INS. CO.

No. 2517.

Court of Civil Appeals of Texas. Waco.

May 6, 1943.

Rehearing Denied June 10, 1943.

Mark Smith, of Waxahachie, for appellants.

Barney A. Garrett, of Waco, Forrester Hancock, of Waxahachie, and Cole, Patterson & Cole, of Houston, for appellee.

RICE, Chief Justice.

Modern Mutual Health & Accident Insurance Company (now Old National Life Insurance Company), appellee, brought this suit against Martha Frierson, individually and as administratrix of the estate of T. J. Frierson, and others, appellants, to recover the title and possession of two lots situate in Waxahachie, Ellis County, Texas, as well as to remove cloud from title, and to recover the reasonable rental value of the property for the period of time during which the possession thereof was withheld by appellants.

Appellants pleaded the general denial, specially pleaded their title, the two years statute of limitation as to rents, Vernon's Ann.Civ.St. art. 5526, the three, five and ten year statutes of limitation as to title, Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, and, as an offset to appellee's claim for rent, payments made by them by way of repairs to the building and for taxes assessed against said property.

The trial court overruled motions for an instructed verdict filed by the respective parties; and, over appellee's objection, submitted the case to the jury on four special issues, in response to which the jury found: (1) That the reasonable rental value of the real estate in question since the date appellee filed this suit (November 4, 1940) was $15 per month; (2) that appellants had made permanent and valuable improvements to the roof of the building; (3) that such improvements were made in good faith; and (4) that the reasonable amount of said improvements was $200.

The court overruled appellee's motion for judgment notwithstanding the verdict, and thereupon rendered judgment in favor of appellee for title and possession of the property involved, and on the findings of the jury, for the sum of $228.90 for rents. To this judgment all parties excepted, and appellants perfected their appeal to this court.

Appellee caused to be delivered to the attorney of record for appellants its written request for the admission by appellants of the truth of certain relevant matters of fact therein set forth. In making this request appellee complied with the provisions of Rule 169 of Texas Rules of Civil Procedure.

Appellants did not deliver to appellee a sworn statement specifically denying the matters concerning which an admission was requested, nor did they attempt to comply with the provisions of said rule; therefore, each of the relevant matters of fact as to which an admission was requested must be deemed admitted. Rule 169 above, and Masten v. Masten, Tex.Civ. App., 165 S.W.2d 225, writ refused.

The aforesaid request for the admission of the truth of relevant facts made by appellee of appellants was comprehensive, and in our opinion, there was embraced therein every issuable fact tendered by appellee's pleadings. To summarize, they are: That appellee and appellants claimed title to each of the lots in controversy under a common source. As to one lot, the common source is a deed dated January 18, 1893, to Waxahachie Lodge No. 2103, Grand United Order of Odd Fellows; as to the other lot, the common source of title is a deed to said Lodge dated May 26, 1914, from T. J. Frierson. Immediately after the execution of each of said deeds, the said local lodge went into possession of said lots and used and occupied the same for lodge purposes so long as said local lodge existed. Waxahachie Lodge No. 2103, Grand United Order of Odd Fellows, was a local and subordinate lodge of District Grand Lodge No. 25, Grand United Order of Odd Fellows, and regularly sent delegates to the Grand Session of said District Grand Lodge. The last quarterly report made by said local lodge to the Endowment Department of said District Grand Lodge was made for the quarter ending June, 1936, and was received in the office of the Endowment Secretary on May 1, 1936. The local lodge made no reports and paid no dues or assessments to said District Grand Lodge or to its "Endowment Department" after the quarter ending in June, 1936. T. J. Frierson was a member of said local lodge on July 2, 1937, and had been a member since prior to May 2, 1914. He was the last permanent Secretary of said local lodge. T. J. Frierson died intestate on or about June 29, 1940, and Martha Frierson, his wife, qualified as administratrix of his estate. The deceased was survived by his said wife and two

children, all defendants herein. On or about July 2, 1937, T. J. Frierson and others, purporting to act as trustees for said local lodge, joined by others who had been members of said local lodge, executed a deed dated July 2, 1937, purporting to convey the two lots in controversy to T. J. Frierson, individually, and said deed was soon thereafter filed for record. The defendants claim title under said deed. T. J. Frierson took possession of the property on the date of said deed to him, and remained in possession thereof to the date of his death; his administratrix has been in possession since said time. The reasonable rental value of said property is the sum of $50 per month. The named grantors in said deed to T. J. Frierson attempted to make a sale of said property for the purpose of dividing the property in controversy among themselves as former surviving members of said local lodge, and did divide among themselves the consideration paid therefor by T. J. Frierson.

The Colored Odd Fellows Local Lodge of the State of Texas was granted a charter dated September 10, 1880, authorizing them to organize themselves into District Grand Lodge No. 25, Grand United Order of Odd Fellows, with full power to exercise a general supervision over all lodges of The Grand United Order of Odd Fellows in Texas. Since said charter was granted said District Grand Lodge has been legally established in Texas; and has operated in Texas under said charter since it was granted as a fraternal benefit society. Said District Grand Lodge comprises all of the lodges of colored Odd Fellows in Texas. Since the organization of said District Grand Lodge it has secured annually a permit from the State of Texas to do business in the State of Texas as a fraternal benefit society, which permit has been annually renewed until the year 1938. Said District Grand Lodge established an insurance department for the benefit of all its members, and the lives of all the members of said colored Odd Fellows lodges in Texas were insured in the insurance department of the District Grand Lodge.

On May 21, 1939, at a meeting of the Grand Session of the said District Grand Lodge, a resolution was passed and adopted authorizing the District Grand Master and the Endowment Secretary to effect a contract with some insurance company to take over the properties of the Order in Texas and pay off the claims and assume

the obligations on the policies of insurance outstanding; and said officials did make a contract with appellee pursuant to said resolution and did, as expressly authorized by said resolution, execute deeds conveying to appellee all of the Odd Fellows properties in Texas.

The said District Grand Lodge, in a meeting assembled and composed of the respective delegates comprising said District Grand Lodge, adopted a constitution and by-laws. Said constitution and by-laws and the amendments thereto were binding upon each and all the members of the Colored Odd Fellows lodges in Texas and the members thereof. Article 10 of the constitution and by-laws is set forth in full in appellee's request for admissions of fact. It is the same article as is set forth and construed in the opinion of the court in the case of District Grand Lodge No. 25 Grand United Order of Odd Fellows v. Jones, 138 Tex. 537, 160 S.W.2d 915, and reference is here made to said opinion therefor.

Section 1 of said article provides: "The title to all property, real, personal or mixed acquired by any subordinate lodge or Household of Ruth, by purchase, gift, devise or otherwise, shall be acquired by such subordinate lodge or Household of Ruth as trustee for the District Grand Lodge No. 25, Grand United Order of Odd Fellows; and, the same shall be held in trust by such subordinate Lodge or Household of Ruth for the benefit of the District Grand Lodge, so long as such subordinate lodge or Household of Ruth is alive and has complied with the rules, regulations and laws of the District Grand Lodge."

Section 2 of said article provides: "No property held by any subordinate lodge or Household of Ruth of the District Grand Lodge No. 25, Grand United Order of Oddfellows, shall ever be mortgaged, sold or encumbered in any manner, by the officers or members of such subordinate lodge, or Household of Ruth, without the written permission and consent of the Grand Master of the District Grand Lodge."

Section 4 of said article provides: "When any subordinate lodge or Household of Ruth or the members thereof shall withdraw or rebel against the rules and regulations of the District Grand Lodge or when such subordinate lodge or Household of Ruth shall become defunct, dissolved, demise, cease to operate, withdraw or secede from the grand lodge body, or its charter revoked for any cause, under such

condition such subordinate lodge or Household of Ruth breaches the trust to retain the property of the subordinate lodge or Household of Ruth, and all property of every character or kind held in trust by such local lodge, or Household of Ruth shall be taken over, and repossessed by the District Grand Lodge; and, all members who have severed their connection with the subordinate and District Grand Lodge shall have no right to use or enjoy said property in any manner, or, the revenues and rents derived therefor; and, upon a member severing his connection with either the subordinate or District Grand Lodge, such member loses his right to use the property held by the subordinate lodge, or any property of the District Grand Lodge."

Section 7 of said Article provides: "A subordinate lodge shall be deemed to have demised, become dissolved, or defunct, whenever its members shall withdraw from the subordinate lodge or whenever the members fail and refuse to pay the taxes, dues and assessments, levied or made on such members by the District Grand Lodge, or whenever the members of such subordinate lodge drop below the number of seven members, or whenever the members of such subordinate lodge refuse to obey the laws of the District Grand Lodge or its mandate; and it shall not be necessary that the charter or warrant held by such subordinate be actually withdrawn from such subordinate lodge before the same becomes defunct or dissolved. The Endowment Secretary shall note on his record the date such subordinate lodge or Household of Ruth became defunct, dissolved, withdrawn, or the date of its demise, on the date its charter was revoked."

Section 8 of said Article provides: "When any subordinate lodge or Household of Ruth shall, from any cause, demise or become defunct, dissolved, or its members withdraw from the District Grand Lodge or its charter revoked for any purpose, then the fee to all and whatsoever property held in the name of subordinate body or its officer, shall vest absolutely in the District Grand Lodge, the same to be managed, controlled and disposed of by sale or otherwise by the District Grand Master and District Endowment Secretary, on such terms as such officers may deem best, and to this end the District Grand Master in person or by Deputy, shall take immediate and absolute possession of all property and effects of said subordinate

lodge and the proceeds arising from the sale of any such property, together with whatever money such subordinate lodge has to its credit, and the same shall be placed to the credit of the District Grand Lodge funds, on the books of the Grand Treasurer, which amount shall be used for the general purpose of the District Grand Lodge."

It has been held that the effect of a party's failure to answer inquiries in adverse party's written request for admission or denial of relevant facts made under Rule 169 is comparable to a "legal admission" made in the applicable pleadings of a party, so as to preclude his denial of such facts on the trial of the case. Masten v. Masten, supra.

Therefore, the legal effect of the appellants' failure to answer appellee's inquiries in its written request for admission or denial of the truth of relevant facts, in compliance with Rule 169 supra, was, in our opinion, to present this case to the trial court on an agreed statement of facts insofar as appellee's cause of action was concerned. This statement of facts established in favor of appellee every fact tendered by its pleadings. Therefore, it was the duty of the trial judge to apply the law to the facts so established and render judgment accordingly.

In the case of District Grand Lodge No. 25 Grand United Order of Odd Fellows v. Jones, hereinabove cited, the articles of the constitution and by-laws of this fraternal benefit society quoted above were construed and held valid and effective. This case also holds that by virtue of the terms and provisions of the constitution and by-laws of this fraternal benefit society, when a subordinate lodge becomes defunct, the title to the real property held by such subordinate lodge thereupon vests in the District Grand Lodge.

The trial court, in our opinion, correctly applied the law to the facts of this case when it held in favor of appellee as to the title and possession of the real property in dispute.

We are of the opinion that the trial court was bound by the legal effect of the appellants' failure to deny that the reasonable rental value of the real property here involved was $50 a month, as set forth in appellee's request for admission of facts. If the legal effect of appellants' failure to make denial thereof was to admit

as true that the reasonable monthly rental value of said property was $50 (and we think that it was under authority of Masten v. Masten, supra), then the trial court should not have submitted any issue to the jury as to such rental value, but should have granted appellee's request for a peremptory instruction and have rendered judgment for appellee for its rent at $50 per month for that period of time not within the bar of the two years statute of limitation.

Defendants alleged "that they had been out the following amounts of expense on said property since the acquisition of same, namely: Repairing roof of building $200.-00; electric light bills $67.00; city taxes $90.15; state and county taxes $125.95," and prayed judgment therefor if they were cast in judgment.

Over appellee's objection the trial court submitted to the jury issues inquiring whether the appellants had in good faith made permanent and valuable improvements on the property in dispute, and the amount in money, of the improvements found to have been made by appellants. The jury answered favorably to appellants and found the value of the improvements to be $200. This sum, together with the sum of $67 and the amount paid by appellants for taxes, were deducted by the trial court from the rent which he found appellee should recover.

In submitting to the jury the issues as to permanent and valuable improvements, and in deducting the value thereof as found by the jury from the rent to which appellee was entitled, we are of the opinion the trial court was in error.

The burden was on the appellants not only to allege and prove the making by them in good faith of permanent and valuable improvements on the real estate in dispute, but also to allege and prove how much the land in dispute was enhanced in value by the improvements. Article 7393, R.C.S.; Herndon v. Reed, 82 Tex. 647, 18 S.W. 665; Allen v. Draper, Tex.Civ.App., 204 S.W. 792; Sheffield v. Meyer, Tex.Civ. App., 229 S.W. 614; Bemrod v. Wright, Tex.Civ.App., 273 S.W. 938.

Appellants wholly failed to meet this burden. There was no evidence that the real property in question was enhanced in value in any amount by the improvements. The only evidence introduced in reference thereto was that appellants had repaired the roof of the building at a cost of $200. The kind or extent of the repairs was not developed.

Appellants complain of the refusal of the trial court to submit their special requested issues numbered "D" and "E". The transcript reveals that said issues sought a finding ·of the jury as to whether the appellee had been in adverse possession of the property for three and five years, respectively. We fail to see how the trial court's action prejudiced appellants, and overrule these assignments.

The court correctly refused to give to the jury defendants' requested issues under the ten year statute of limitation. Under the admitted facts and the decision in the above cited case of District Grand Lodge v. Jones, the local lodge held the property in controversy in trust for the District Grand Lodge. This was true until the property was conveyed to Frierson in July, 1937. Appellee filed suit November 4, 1940. There was no evidence to support the requested issues.

We have carefully considered all the points presented by both appellants and appellee, and each of same, with the exception of those expressly sustained herein, are overruled.

The judgment of the trial court awarding the title and possession of the real property here involved to appellee and removing cloud from appellee's title is affirmed; the trial court's judgment fixing the rental value of the property at $15 per month, and allowing appellants a $200 credit thereon for improvements and a further credit of $67 for electric lights, is reversed; judgment is here rendered that appellee recover of Martha Frierson, in her capacity as administratrix of the estate of T. J. Frierson, deceased, the sum of $50 per month for the period of time beginning two years prior to November 4, 1940 (the date appellee instituted the suit), to the 13th day of June, 1942, after deducting therefrom the sum of $216.10 paid by appellants by way of city, county and state taxes assessed against the property in dispute. It is further decreed that the sum decreed to appellee herein shall bear interest at the rate of six per cent per annum from June 13, 1942, until the same is paid.