**Byron BRANSCUM and Michael G. Byboth Appellants,**

v.

**Joe A. CASTLEBERRY, Appellee.**

No. 05-84-00619-CV.

Court of Appeals of Texas, Dallas.

June 18, 1985.

Rehearing Denied July 29, 1985.

Allen R. Morris, Dallas, for appellants.

Bill Liebbe, Dallas, for appellee.

Before AKIN, GUILLOT and HOWELL, JJ.

AKIN, Justice.

Joe A. Castleberry sued Byron Branscum, Michael G. Byboth, and Texan Transfer, Inc. to collect a promissory note executed by Texan Transfer. Castleberry sought to disregard the corporate entity and hold appellants, who were then the sole shareholders of Texan Transfer, individually liable for the promissory note. The jury found that Texan Transfer was the alter ego of appellants and the trial court rendered judgment against Texan Transfer, Branscum, and Byboth, jointly and severally. Branscum and Byboth appeal, contending that the trial court's charge to the jury on the issue of alter ego was fatally defective. We agree with this contention. Appellants also contend that no evidence exists to support piercing the corporate veil, with which contention we agree. We also hold that the trial court erred in submitting to the jury the question of alter ego because that ultimate determination is a question of law for the court. Accordingly, we reverse the judgment of the trial court and render judgment for appellants.

Texan Transfer was originally formed by Branscum, Byboth, and Castleberry as a partnership. The partnership delivered new furniture sold by Freed's Furniture Company. The business was incorporated in September 1980 as Texan Transfer, Inc. Branscum, Byboth, and Castleberry each owned one-third of the corporation's stock. Branscum also operated a household goods moving business, Elite Moving, as a sole proprietorship. Elite Moving sometimes used trucks owned by Texan Transfer, and employees of one business often worked for the other. Elite Moving and Texan Transfer operated from the same business address.

After the firm's incorporation, dissension among the shareholders surfaced, and Branscum, Byboth, and Castleberry agreed that *the corporation* would purchase Castleberry's stock. The purchase price was $42,000, consisting of a $1,000 payment to

be made on July 17, 1981, a $3,800 payment due on August 15, 1981, and a $38,400 promissory note payable in monthly installments of $1,200 commencing on October 7, 1981. The stock purchase agreement and the $38,400 promissory note were executed on July 17, 1981, with Byboth signing for the corporation as president. Neither Branscum nor Byboth signed the documents in his individual capacity.

Texan Transfer experienced serious financial difficulties in the months following execution of the stock purchase agreement. Eventually, Texan Transfer's assets were sold in order to pay corporate liabilities. In September 1982, Branscum and Byboth formed a new corporation, Custom Carriers, Inc. Custom Carriers obtained the contract to deliver furniture for Freed's Furniture Company, which had been terminated by Texan Transfer.

Texan Transfer paid Castleberry the initial $1,000 payment called for in the stock purchase agreement. No subsequent payments, however, were made. Consequently, Castleberry sued Texan Transfer, Branscum, and Byboth to recover the $3,800 that was to have been paid to him on August 15, 1981, and the $38,400 due him pursuant to the promissory note.[1] The jury found that Texan Transfer was the alter ego of appellants and the trial court rendered judgment in Castleberry's favor.

■ On appeal appellants contend that the trial court's charge to the jury on the issue of alter ego was fatally defective. We agree. The court instructed the jury that:

> You are instructed that a corporation may become an "alter ego" or mere extension of the individual if the individual controls the corporation and conducts it's business affairs without due regard for the separate corporate nature of the business; or that such separate corporate nature ceased to exist; or if the corporate assets are dealt with by the individual as if owned by the individual; or if corporate formalities are not ad-

hered to by the corporation; or if the individual is using the corporate entity as a sham to perpetrate fraud or to avoid personal liability. You are further instructed that in determining whether the corporation adhered to corporate formalities and maintained separate existence, you may consider whether the corporation maintained separate offices; maintained separate books; maintained separate employees; had separate stationery; issued stock; held regular meetings of its shareholders and Board of Directors; kept and maintained written records of the proceedings of meetings of the shareholders and Board of Directors; filing of tax returns, entering into contracts, maintenance of bank accounts, holding titles to property, and other indicia of a separate corporate entity. *You are instructed that the existence of one or more of these factors may or may not make Texan Transfers, Inc. the alter ego of Byron Branscum.* Whether or not Texan Transfer, Inc. was the alter ego of Byron Branscum should be determined from the total dealings of Byron Branscum and Texan Transfer, Inc. [emphasis added]

We hold that the court's charge as a whole permitted the jury to find that Texan Transfer was appellants' alter ego based upon the existence of only one of the factors listed above. Under the court's charge, the jury could have found Texan Transfer to be appellants' alter ego merely upon a finding that "one or more" of the above-quoted factors existed. Indeed, the law does not permit the corporate entity to be disregarded even if all of the items in the instruction existed without dispute. Likewise, neither does the evidence as a whole support the judgment against the appellant shareholders. Consequently, we hold that the court's charge was fatally defective and that the evidence adduced by Castleberry is not evidence which justified disregard of the corporate entity.

■ Disregard of the corporate entity is an exception to the general rule that

---

1. The note contained an acceleration clause.

forbids ignoring corporate existence. *Lucas v. Texas Industries, Inc.*, 27 Tex.Sup. Ct.J. 491, 492, 696 S.W.2d 372 (1984); *First National Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 103 (Tex.Comm'n App.1939, opinion adopted); *Hickman v. Rawls*, 638 S.W.2d 100, 102 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). Because the corporate entity, created by the legislature, is an integral part of our economic system, this general rule governs in all but the most extraordinary circumstances. The exception to this rule exists only in extreme situations where a party proves that the sole purpose of the corporation is to perpetrate a fraud against the public or against public policy such as to achieve a monopoly, to circumvent a statute, or to protect crime. *Hanson Southwest Corp. v. Dal-Mac Construction Co.*, 554 S.W.2d 712, 716–17 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.); *see Lucas*, 27 Tex.Sup.Ct.J. at 492; *Torregrossa v. Szelc*, 603 S.W.2d 803, 804 (Tex.1980); *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 351 (1955); *First National Bank in Canyon*, 132 S.W.2d at 103. Additionally, in contract cases, such as the case here, there must be a showing of fraud or bad faith. *Lucas*, 27 Tex.Sup.Ct.J. at 492; *Holmes v. Clow*, 533 S.W.2d 99, 106 (Tex.Civ.App.—Tyler 1976, no writ). In summary, a corporation is a creature apart from its shareholders and should not be ignored by courts unless a public necessity exists to sacrifice the corporate entity so that some accepted public policy may be upheld or defended. *See Berkey v. Third Ave. Ry. Co.*, 244 N.Y. 84, 155 N.E. 58, 61 (1926) (per Cardozo, J., later Associate Justice of the United States Supreme Court). The public policy in Texas, of course, is enunciated only by the legislature. *See District Grand Lodge No. 25 Grand United Order of Odd Fellows v. Jones*, 138 Tex. 537, 160 S.W.2d 915 (1942).

■ Furthermore, we hold that the ultimate issue of whether a corporation is the alter ego of an individual or individuals is a question of law and, therefore, should not be submitted to the jury. The jury is to determine any disputed fact issues and then the court should determine whether the facts, as found by the jury, rise to the extraordinary level required to justify disregarding the corporate entity. Because this determination is a complex question of law, it must be made by the trial court rather than by laymen ill-equipped to resolve such questions.

The judgment of the trial court is reversed and judgment is rendered for appellants.

HOWELL, J., dissents.