PETE MINOR ET AL., TRUSTEES GATE CITY MASONIC LODGE OF ORANGE, TEXAS, v. ST. JOHN'S UNION GRAND LODGE OF FREE AND ACCEPTED ANCIENT YORK MASONS OF THE UNITED STATES OF NORTH AMERICA, COLORED, OF TEXAS ET AL.

Decided June 30, 1910.

**1.—Masonic Lodge—Grand Lodge—Relative Rights and Powers.**

Evidence as to the relative rights and powers of a subordinate Masonic Lodge and of the Grand Lodge, under and by which it was chartered, considered, and held that it was not within the power of the subordinate lodge to withdraw from the jurisdiction of the Grand Lodge without its consent, nor to transfer to a different organization property which had been bought by the subordinate lodge for lodge purposes; and that the legal title to said property remained in the trustees to whom it had been conveyed for the benefit of the lodge, notwithstanding such attempt to transfer it.

**2.—Same—Members—Rights of Property.**

A member of a subordinate Masonic Lodge loses his interest in the property of the lodge when he ceases to be a member of the same; such property belongs to the lodge as an entity, and not to the individuals constituting the membership.

**3.—Trial Without Jury—Findings of Fact—Purpose.**

The purpose of findings of facts by a trial court is not to present the evidence, but the court's conclusions as the result of the entire evidence, and such findings may embrace such reasonable inferences of fact as are fairly deducible from the evidence.

Appeal from the District Court of Orange County. Tried below before Hon. W. B. Powell.

*Geo. E. Holland* and *V. H. Stark,* for appellants.

*J. T. Hart, O. R. Sholars* and *Adams & Huggins,* for appellees.

REESE, ·ASSOCIATE JUSTICE.—This is an ordinary action of trespass to try title instituted by the above named Grand Lodge (whose full title we can not undertake to repeat in this opinion, but will simply use the term "Grand Lodge" in referring thereto) and Joe Harris, Clem Green and Ben Wilkes, who sue as trustees of Prince Edwin Masonic Lodge, against the Gate City Masonic Lodge and its trustees, Jones Robinson, Will Banks and D. D. Wells, to recover the title and possession of certain real estate in the city of Orange, Texas. The contest is over the ownership and right of possession of the property, which was on April 16, 1898, conveyed by L. Miller to named parties as trustees of Prince Edwin Masonic Lodge of Orange, Texas, a masonic body subordinate

to and under the jurisdiction of the Grand Lodge aforesaid, which is claimed by defendants to have become merged in the aforesaid Gate City Lodge, another colored masonic body subordinate to and subject to the jurisdiction of another and rival colored Grand Lodge. Defendants pleaded their title founded upon such merger, and prayed affirmatively for judgment removing the cloud of plaintiffs' claim, and establishing their title. The character of the plaintiffs' and defendants' respective title will fully appear from the court's findings of fact, and need not be further stated here.

The case was tried without a jury, resulting in a judgment that the plaintiffs, Joe Harris, Clem Green and Ben Wilkes, as trustees of Prince Edwin Masonic Lodge of Orange, recover the property, and that the said Grand Lodge, plaintiffs, taking nothing, and that defendants take nothing by their cross-action. From the judgment the said defendants prosecute this appeal.

The trial court prepared and filed the following conclusions of fact, some of which, not essential to the conclusions of law or the judgment, are objected to by assignments of error, to which attention will be called in disposing of such assignments:

"1. That some time prior to the year 1898, there existed a voluntary association of negroes in Texas, the said association being named the St. John Union Grand Lodge of Free and Accepted Ancient York Masons of the United States of North America, Colored, in the State of Texas, and that the same was a masonic Grand Lodge for the State of Texas, and said organization will hereinafter be styled the Grand Lodge.

"2. I find that prior to 1898 there existed at Orange, Texas, a voluntary association of negroes which association was known as the Prince Edwin Masonic Lodge of Orange, Texas, and said Prince Edwin Lodge of Orange, Texas, will hereinafter be styled the Prince Edwin Lodge.

"3. That the Prince Edwin Lodge was subordinate to said Grand Lodge and was conducted upon the authority of a dispensation called "warrant" (and hereinafter styled warrant) issued by said Grand Lodge.

"4. That the Grand Lodge had the exclusive power to grant said warrant and revoke the same at any time, and that grievances of the Prince Edwin Lodge were appealable to the Grand Lodge; that the Prince Edwin Lodge had local by-laws regulating the time, amount of dues to be paid to the local lodge, and the time, the place of meeting of said lodge, and such regulations as affected its local government, but that it only had such power in making by-laws as was delegated to it by the Grand Lodge, and that the right of the Prince Edwin Lodge to exist or to dissolve was not lodged in its local government but in the Grand Lodge, to which it owed allegiance.

"5. That the Prince Edwin Lodge could not dissolve or cease to exist or pass into another organization by a vote of its members except by and with the consent and approval of the Grand Lodge.

"6. That on the 16th day of April, 1898, for the purpose of acquir-

ing and owning quarters within which to hold its meetings, and with the funds of the lodge, the Prince Edwin Lodge, acting through its trustees, Alexander George, Edmund Love and Walter Petrie, purchased from L. Miller the lots in controversy, and the said L. Miller executed to the said Alexander George et al., trustees of said Prince Edwin Lodge, a deed thereto.

"7. That after said property was acquired the Prince Edwin Lodge erected thereon a lodge building and other improvements and remained in continuous existence and possession until the 12th day of May, 1902.

"8. That the said Alexander George, Edmund Love and Walter Petrie were the regularly elected and qualified trustees of said Prince Edwin Lodge at the time of the execution and delivery of said deed, and were succeeded by a regularly elected and qualified succession of trustees until the said 12th day of May, 1902, during all of which time the Prince Edwin Lodge remained continuous and in active existence.

"9. That the Legislature having in 1898 authorized the incorporation of such orders, the Grand Lodge incorporated and obtained a charter on the 18th day of May, 1901.

"10. That the Prince Edwin Lodge knew of the action of the Grand Lodge in incorporation and voluntarily contributed $25 to the fund to be raised by the Grand Lodge for the purpose of defraying expenses incident to incorporating, and after said incorporation the Prince Edwin Lodge continued in existence as a lodge under the Grand Lodge as incorporated, paying its Grand Lodge dues regularly and receiving visitations of its Grand Officers and attending the meetings of said Grand Lodge, where it was represented by a duly accredited delegate, at each successive meeting of the same up to the present time.

"11. That on the 12th day of May, 1902, a meeting was held in the said lodge building and in the lodge room of the Prince Edwin Lodge, which meeting was called to order and presided over by one Abe Roberts, who was at that time the worshipful master of the Prince Edwin Lodge, and Ben Wilkes, who was at that time the secretary of the Prince Edwin Lodge, performing the duties of secretary of said meeting. That there were present at said meeting eleven members of the Prince Edwin Lodge and ten others, not members of the Prince Edwin Lodge.

"12. That at said meeting a motion was made to dissolve the Prince Edwin Lodge and to create a new lodge to be known as the Gate City Masonic Lodge of Orange, Texas, which last named lodge will hereinafter be styled the Gate City Lodge.

"13. That at said meeting the said Abe Roberts, worshipful master, represented to the body assembled that it was the purpose of the Prince Edwin Lodge to change itself into the Gate City Lodge, and that the members thereof, in addition to all of the rights and privileges accruing to them formerly as members of the Prince Edwin Lodge, would, in addition thereto, be entitled to insurance, the terms of which were that at the death of a member $75 would be drawn from the funds of the Grand Lodge of the Gate City Lodge to defray his funeral expenses,

and that at the end of the Grand Lodge year following, all· of the money
remaining in the treasury of the superior or Grand Lodge, to which the
said Gate City Lodge was to become subordinate, would be divided and
distributed among the widows of such deceased members.

"14.  That at said meeting there was present all three of the mem-
bers of the Prince Edwin Lodge who were at the time the trustees of
said Prince Edwin Lodge; that when the vote was taken upon said
motion, that all of said trustees and said secretary voted in favor of
same and in fact all of the members of the Prince Edwin Lodge who
were present voted in favor of said motion to dissolve the Prince Edwin
Lodge and create the Gate City Lodge.

"15.  That about nine or ten months afterwards there was a meeting
held at a private residence at which was present Clem Green (who had
for some years been a member of Prince Edwin Lodge, but who, on
said night of May 12th at said meeting and upon faith of the represen-
tations made by the said Abe Roberts, voted to dissolve said Prince
Edwin Lodge and join Gate City Lodge, but having remained in said
Gate City Lodge long enough to ascertain that said representations were
untrue, had refused to attend further meetings of said Gate City Lodge
or to longer affiliate with its members as Masons), A. C. Freelow, Joe
Harris and Bob Martin, who at the time of said meeting on May 12th
were suspended members of Prince Edwin Lodge.  That at said meeting
all of those present expressed their loyalty to the Prince Edwin Lodge
and it was decided to communicate with the Master of the Grand Lodge
and have him assist them in the difficulties of the Prince Edwin Lodge.

"16.  That in response to a letter written after said meeting and as
a result of same the Master of the Grand Lodge, E. W. Atkinson, came
to Orange and held a meeting at which were present the same parties
named in the fifteenth finding above.

"17.  That shortly after the organization of the Gate City Lodge
some of its members became dissatisfied, and in March, 1903, wrote to
the Grand Master of the Grand Lodge, to which Prince Edwin Lodge
was a subordinate, telling of their troubles.  That in response to said
letter Grand Master Atkinson visited Orange and found a few members
of the Prince Edwin Lodge without a warrant or place to meet, and
that the Gate City Lodge had taken all the property of the Prince Ed-
win Lodge of every kind and refused to give it up.  That said Grand
Master recognized the Prince Edwin Lodge and issued it a. permit to
work in lieu of its warrant usurped by the Gate City Lodge.  That
Prince Edwin Lodge is an existing lodge and has been so recognized by
the said Grand Lodge ever since its organization.

"18.  That the Prince Edwin Lodge did not hold a meeting from the
said 12th day of May until they received the substitute or provisional
warrant mentioned in the foregoing finding, which was about ten months,
after which time they proceeded under the same name, using the same
seal and in all things proceeding in the same manner as Prince Edwin
Lodge had always proceeded, and electing a regular succession of trustees,

the said Joe Harris, Clem Green and Ben Wilkes being at present the regularly elected and qualified trustees of the Prince Edwin Lodge.

"19. That some months after said May 12th, Ben Wilkes, Ed Hill and Edmund Love, all of whom had voted at said meeting held on May 12th in favor of the dissolution of the Prince Edwin Lodge and the creation of the Gate City Lodge, abandoned said Gate City Lodge and refused to any longer participate in the same or affiliate with its members, came back to the Prince Edwin Lodge and have since been loyal members thereof, of the latter lodge, in which they were members in good standing on May 12th, 1902.

"20. That the said Edmund Love, Ben Wilkes, Ed Hill and Clem Green who were never shown by the records of the Grand Lodge to have been expelled or suspended, but upon their offering to return to said Prince Edwin Lodge, the Master of said Grand Lodge being informed of their rebellion, forgave them and they have since been regular and loyal members of said Prince Edwin Lodge, except the said Ed Hill, who was a regular and loyal member of the same until his death sometime ago.

"21. That the action taken at said meeting on said night of May 12, 1902, was done without the knowledge or consent of the Grand Lodge.

"22. That the Prince Edwin Lodge has never met in said lodge building since the 12th day of May, 1902.

"23. That there are at present only four active members of the Prince Edwin Lodge, towit: Clem Green, Joe Harris, Ben Wilkes and Edmund Love. That in accordance with the rules of the Grand Lodge of the order an active lodge may be maintained by three members, and a quorum for the transaction of business in said order is complete when three members are present.

"24. That the Gate City Lodge from the time of its organization on May 12, 1902, has recognized and paid dues to and received visitations from a certain Grand Lodge which has no connection with the Grand Lodge under which the Prince Edwin Lodge acted or is acting. The Gate City Lodge recognizes its Grand Lodge as the superior body in the same way that the Prince Edwin Lodge recognizes its grand body as its superior, but that, although both bodies claim to be Masons, they do not affiliate or recognize one another as Masons and are distinct and separate orders and the purposes of their organization and existence are not shown to be the same.

"25. That since the said night of May 12, 1902, the Gate City Lodge has retained the possession of the said lodge building and continued in regular existence and has elected a regular succession of trustees who claim to be the regular successors of the trustees to whom the land in controversy was deeded.

"26. That the Gate City Lodge had no connection with the same Grand Lodge with which the Prince Edwin Lodge was and is affiliated, and uses a different seal and operates under a dispensation or warrant

issued by a Grand Lodge having no connection with the Grand Lodge to which the Prince Edwin Lodge was and is subordinate.

"27. That the records of the Grand Lodge do not show the Prince Edwin Lodge was ever dissolved, suspended or in any way ceased to exist. That the Prince Edwin Lodge has had a regular delegate or representative at each meeting of the Grand Lodge since the year 1898 and has received all visitations of the Grand Lodge since said time, and is and has ever been in good standing with the said Grand Lodge.

"28. That this is an ordinary action of trespass to try title brought by the Grand Lodge and the trustees of the Prince Edwin Lodge, plaintiffs, against the trustees of the Gate City Lodge, defendants.

"29. That L. Miller is the common source of title.

"30. That by the rules and regulations of the order a suspended member labored under such disability during his suspension as to not permit him to vote, but was subject to reinstatement, and remained during such suspension a member of the order.

"31. That by the laws of the Grand Lodge when a subordinate lodge ceased to exist its property became the property of the Grand Lodge.

"32. That the Prince Edwin and Gate City Lodges are each bound by the rules and regulations of the Grand Lodges with which they are affiliated."

None of these conclusions are objected to by specific assignments of error except parts of the findings contained in the fourth and tenth paragraphs, and the findings embraced in the fifth and thirty-second paragraphs, upon which specific assignments of error are based. No objections being presented to the other findings, by appropriate assignments of error, they are therefore adopted by us as our conclusions of fact. As to those objected to, we find that they are fairly deducible as reasonable inferences from the testimony. We therefore adopt, as our conclusions of fact, the findings of the trial court above set out.

The first and second assignments of error attack the judgment of the court adjudging the property to appellees. Appellants' contention presented by these assignments is that the present trustees of the Gate City Lodge are the legal successors of the trustees of Prince Edwin Lodge to whom the property was conveyed. The court's conclusion of law upon which the judgment is based, is that the present trustees of Prince Edwin Lodge are such successors and are entitled to the property for the use and benefit of Prince Edwin Lodge, the original *cestui que trust.*

It follows, from the court's findings of fact, that Prince Edwin Lodge is not an independent organization existing solely for the benefit of its members, but that it is a part and parcel of a larger organization known as the Grand Lodge organized for specific purposes, which purposes are to be accomplished by and through such subordinate bodies as the local lodge in this case. The local lodge came into being by virtue of the power conferred upon its members to organize themselves into a subordinate lodge. The conveyance of Miller to the trustees named in

the deed placed the legal title in them and their successors for the benefit, not of the individual members then composing Prince Edwin Lodge, but for the benefit of the lodge itself as an existing entity, the membership of which was liable to continual change. When a member ceased to be such, his interest in this property also ceased, and this makes a radical difference between the rights of the members as individuals, and the members of a joint stock association organized for purely business purposes, as in the case of Allen v. Long (80 Texas, 264), to which the present case bears no sort of analogy. This was not a business enterprise at all, but an organization, as its name indicates, for purely benevolent and fraternal purposes. When the property was conveyed to the trustees of Prince Edwin Lodge it was for the use and benefit of this body in carrying out the purposes of its organization under the jurisdiction and authority of the Grand Lodge from which it received the warrant for its existence. It was not in the power of the members of this lodge to destroy the old organization and form a new one entirely foreign to the original lodge, and thereby pass the title of this property to this new organization. A majority of them, no matter how large, could just as well have dissolved Prince Edwin Lodge and formed themselves into a business association of any kind thus devoting the property to purely business purposes. The action of the members in forming Gate City Lodge was not simply to change the name of Prince Edwin Lodge, but its necessary result, if carried out, was to destroy the old lodge, and, without any authority from the original parent body, to create a new one. The court finds that Prince Edwin Lodge has never ceased to exist; that enough members thereof to constitute a lodge under the laws of the governing body, have always remained, and still remain, preserving their allegiance to the Grand Lodge, and through it, the life of the subordinate lodge, and that appellees are the true and lawful successors, under the laws of the order, of the original trustees of Prince Edwin Lodge to whom the property was conveyed. This being true, they are entitled to hold the property for the use of this lodge. The case of Brown v. Clark (102 Texas, 323), is, we think, in point. (Watson v. Jones, 13 Wall, 679-734; McKinney v. Griggs, 96 Am. Dec., 360; Harper v. Straws, 14 B. Monroe, 48; Godfrey v. Walker, 42 Geo., 562). This disposes of the first, second and third assignments of error, which are overruled.

By their fourth assignment appellants present the contention that the court erred in so much of the fourth finding of fact as finds "that the Grand Lodge had the exclusive power to grant said warrant and revoke the same at any time, and that grievances of the Prince Edwin Lodge were appealable to the Grand Lodge," because such finding is not supported by the evidence. In this, we think, appellants are in error. The purpose of such findings is not to present the evidence, but the trial court's conclusions as the result of the entire evidence, and may properly embrace such reasonable inferences of fact as are fairly

deducible from the entire evidence. Judged by this rule, we can not say this finding is not supported by the evidence.

Without repeating here, we make the same answer to the fifth, sixth and seventh assignments of error.

We may add further that, even if each of the findings of facts so objected to be stricken from the record, there remain, unobjected to, sufficient facts to authorize the judgment. The essential facts showing the character and purpose of the original Prince Edwin Lodge, and its continued existence, and that the Gate City Lodge is, as to the original organization, an entirely foreign body, still remain.

It is objected to the thirty-second finding of fact that it is in fact a conclusion of law. Whether this be true or not is not important. It is a fair conclusion of law from the facts found, and may be disregarded as a finding of fact, without affecting the correctness of the judgment.

We are of the opinion that the trial court arrived at a correct conclusion as to the rights of the parties in the property in controversy. Appellants are mistaken as to their right to sever their relations with their Grand Lodge and take their lodge as an organized body with them into this foreign jurisdiction.

We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.