## SIMPSON et al. v. CHARITY BENEV. ASS'N, Inc.

### No. 14184.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 27, 1942.

Rehearing Denied March 27, 1942.

See, also, Tex.Civ.App., 149 S.W.2d 227; Tex.Sup., 152 S.W.2d 1093.

W. J. Durham, of Sherman, for appellants.

Clark, Craik, Burns, & Weddell and J. Harold Craik, all of Fort Worth, for appellee.

BROWN, Justice.

This is a controversy between colored citizens, arising over the ownership of Lodge property.

In January, 1939, a suit was filed by "District Grand Lodge No. 25, Grand United Order of Oddfellows, sometimes known as Grand United Order of Oddfellows, a fraternal benefit society", against the appellee, Charity Benevolent Association, Incorporated. The original petition alleges that the suit "is brought by and through H. E. Hall and G. A. Simpson, as trustee for the benefit of District Grand Lodge No. 25, Grand United Order of Oddfellows, sometimes known as Grand United Order of Oddfellows."

On August 16, 1939, G. A. Simpson and H. E. Hall were, by order of the court, substituted as plaintiffs in the suit and went to trial on a second amended petition filed January 12, 1940.

This petition begins with allegations in trespass to try title, and then in reply, evidently, to some pleading that the defendant had theretofore filed, alleged that the defendant ought not to have and maintain any action against plaintiffs for title and possession of the property involved, because such claim is barred by the statutes of limitations of 3 years, 5 years, 10 years and 25 years, respectively.

. Next, the plaintiffs pleaded their title specially by allegations to the effect that, on or about the 1st day of July, 1914, the District Grand Lodge, Grand United Order of Oddfellows and its Endowment Department, the District Grand Lodge Endowment of District Grand Lodge No. 25, and of District Household of Ruth No. 13, Grand United Order of Oddfellows of Texas, through the officers and members of one of its subordinate lodges No. 2144, located in Fort Worth, Tarrant County, Texas, purchased for a valuable consideration by warranty deed in writing from one Chris Allmendinger, the aforesaid land and premises and that immediately after said date the aforesaid District Grand Lodge, through its aforesaid subordinate lodge and its officers and the members thereof, immediately went into possession of said property and that upon the aforesaid date the aforesaid and aforenamed District Grand Lodge became the owner in fee simple of the title to said land and that the aforesaid District Grand Lodge, through the members of its aforesaid subordinate lodge No. 2144, occupied said property until on

or about the 5th day of April, 1937, when the same was, for a valuable consideration, sold, transferred and conveyed by warranty deed by the District Grand Lodge No. 25, Grand United Order of Oddfellows and its Endowment Department, the District Grand Lodge Endowment of District Grand Lodge No. 25 and of District Household of Ruth No. 13, Grand United Order of Oddfellows of Texas, to these plaintiffs.

It is alleged further that long prior to July 1, 1914, the aforesaid District Grand Lodge, Grand United Order of Oddfellows and its Endowment Department, the District Grand Lodge Endowment of District Grand Lodge No. 25, and of District Household of Ruth No. 13, Grand United Order of Oddfellows of Texas, was operating and had been duly and legally licensed and chartered under and by virtue of the general laws of the State of Texas to operate in Texas as a fraternal benefit society.

It is further alleged that the said subordinate lodge No. 2144 at Fort Worth was a part of the "set up" shown by the names and Departments as alleged but that on or about October 1, 1936, the officers and members of the subordinate lodge "withdrew from said District Grand Lodge by refusing to pay the monthly and quarterly assessments and by refusing to report the membership of said subordinate lodge to the aforesaid Grand Lodge." That they "unlawfully and fraudulently dissolved the aforesaid subordinate lodge by failing to pay their dues and assessments and by transferring the members of said subordinate lodge and by attempting to transfer the property of said District Grand Lodge, then held by the former officers and members of the aforesaid District Grand Lodge, in trust for the benefit of the aforesaid Grand Lodge."

The next paragraph (No. 11) of the pleading asserts "that on or about the first day of October, 1936, the aforesaid subordinate Lodge No. 2144 became dissolved, defunct and demised as hereinbefore alleged, and the members and officer thereof voluntarily withdrew from the aforesaid subordinate lodge and District Grand Lodge and did organize the Charity Benevolent Association, the defendant herein."

Next follow allegations that the District Grand Lodge has for many years had a written constitution and by-laws duly and legally adopted by its members prior to the date the property in controversy was purchased; that such were in full force and effect.

Portions of "the Constitution and by-laws" are next copied, viz:

"Sec. 1. The title of all property, real, personal or mixed, acquired by any subordinate lodge or Household of Ruth, by purchase, gift, devise or otherwise, shall be acquired by such subordinate lodge or Household of Ruth as trustee for the District Grand Lodge No. 25, Grand United Order of Oddfellows; and the same shall be held in trust by such subordinate lodge and Household of Ruth for the benefit of the District Grand Lodge, so long as such subordinate lodge or Household of Ruth is alive and has complied with the rules, regulations and laws of the District Grand Lodge.

"Sec. 2. No property held by any subordinate lodge or Household of Ruth of the District Grand Lodge No. 25, Grand United Order of Oddfellows shall ever be mortgaged, sold or encumbered in any manner, by the officers or members of such subordinate lodge or Household of Ruth, without the written permission and consent of the Grand Master of the District Grand Lodge."

Section 3 deals with the right to rents and revenues from such property.

"Sec. 4. When any subordinate lodge or Household of Ruth or the members thereof shall withdraw or rebel against the rules and regulations of the District Grand Lodge or when such subordinate lodge or Household of Ruth shall become defunct, dissolve, demise or cease to operate, withdraw or secede from the grand lodge body, or its charter revoked for any cause, under such condition such subordinate lodge or Household of Ruth breaches the trust to retain the property of the subordinate lodge or Household of Ruth, and all property of every character or kind held in trust by such local lodge, or Household of Ruth shall be taken over, and repossessed by the District Grand Lodge; and, all members who have severed their connection with the subordinate and District Grand Lodge shall have no right to use or enjoy said property in any manner, or the revenues and rents derived therefrom; and upon a member severing his connection with either the subordinate or District Grand Lodge, such member loses his right to use the property held by the subordinate lodge, or any property of the District Grand Lodge."

Section 5 provides for the sale of properties belonging to the District Grand Lodge, and Section 6 provides for the purchasing of home sites by the Grand Lodge for subordinate lodges.

"Sec. 7. A subordinate lodge shall be deemed to have demised, become dissolved, or defunct, whenever its members shall withdraw from the subordinate lodge or whenever the members fail and refuse to pay the taxes due and assessments levied or made on such members by the District Grand Lodge, or whenever the members of such subordinate lodge drop below the number of seven members, or whenever the members of such subordinate lodge refuse to obey the laws of the District Grand Lodge or its mandates; and it shall not be necessary that the charter or warranty held by such subordinate lodge be actually withdrawn from such subordinate lodge before the same becomes defunct or dissolved. The Endowment Secretary shall note on his record the date such subordinate lodge or Household of Ruth became defunct, dissolved, withdrawn or the date of its demise or the date its charter was revoked.

"Sec. 8. When any subordinate lodge or Household of Ruth shall, from any cause, demise or become defunct, dissolved or its members withdraw from the District Grand Lodge or its charter revoked for any purpose, then the fee to all and whatsoever property held in the name of such subordinate body or its officers, shall vest absolutely in the District Grand Lodge, the same to be managed, controlled and disposed of by sale or otherwise by the District Grand Master and the District Endowment Secretary on such terms as such officers may deem best, and to this end the District Grand Master in person or by deputy shall take immediate and absolute possession of all property and effects of said subordinate lodge and the proceeds arising from the sale of any such property, together with whatever money such subordinate lodge has to its credit, and the same shall be placed to the credit of the District Grand Lodge funds on the books of the Grand Treasurer, which amount shall be used for the general purpose of the District Grand Lodge."

The pleading asserts that certain persons, W. G. Wortham, J. D. Leathers and Will Lake, in June, 1937, were not officers or members of either the District Grand Lodge or subordinate lodge No. 2144, and owned no interest in the property in controversy and had no authority as officers, members or agents of the District Grand Lodge, or of the said subordinate lodge to execute a deed in the name of the Fort Worth subordinate lodge, but that they falsely and fraudulently executed a deed purporting to be trustees of the subordinate lodge wherein they attempted falsely and fraudulently to convey the title to the land in controversy to the defendant.

Next the plaintiffs allege that they purchased the property in question from the officers of "the fraternal benefit society" who had authority under the constitution and by-laws to sell the same to plaintiffs.

The prayer is for title and possession of the premises in question, damages and the cancellation of the deed to defendant.

This voluminous petition covers twenty-nine pages of the transcript.

We have endeavored to fairly give the material allegations.

It is pertinent to remark here that all pleadings filed by the defendant prior to January 13, 1940, had been by petition and order of the trial court withdrawn for the purpose of giving the defendant an opportunity to file and present a plea in abatement, after plaintiffs had been substituted as pointed out above.

These plaintiffs having specially pleaded their title, they will be bound by such pleading.

The defendant answered fully and by cross-action in trespass to try title.

It is apparent that the plaintiffs seek to recover on the theory that, under the provisions of the constitution and by-laws, this property purchased by the local lodge was simply held by it as a trustee for the District Grand Lodge No. 25, and that the title has, by virtue of such provisions, vested absolutely in the District Grand Lodge No. 25, and that the property was rightfully conveyed to the plaintiffs.

The deed relied upon bears the date April 5, 1937, above the signature. It was not acknowledged until January 20, 1939, and it was not filed for record until August 16, 1939.

This suit was begun on January 21, 1939, and in the original petition filed by "District Grand Lodge No. 25, Grand United Order of Oddfellows, sometimes known as Grand United Order of Oddfellows", no mention is made of the execution or existence of such deed, and it

is very apparent that the substitution as plaintiffs of the grantees in such deed was not prayed for until the deed was delivered and filed for record on the 16th day of August, 1939.

It further appears from the record that on July 14, 1939, the District Grand Lodge No. 25 had been dissolved.

The local lodge No. 2144 was chartered in 1880 by the Grand Lodge whose offices were and are located in the City of Philadelphia. This same Grand United Order of Oddfellows in the year 1880 issued a charter to District Lodge No. 25, "with full power to exercise a general supervision over all Lodges of the Grand United Order of Oddfellows in said District, and that the said District Lodge shall be acknowledged and protected so long as the laws of the Order are observed and kept."

It is disclosed by the deed relied upon by plaintiffs that the consideration was the release of a debt in the recited sum of $8,128.85 owing to grantees Hall and Simpson, "by District Grand Lodge No. 25, Grand United Order of Oddfellows and the District Grand Lodge Endowment of District Grand Lodge No. 25, and of District Household of Ruth No. 13, Grand United Order of Oddfellows, of Texas. The debt herein released by the purchasers represents claims paid by the purchasers to members and beneficiaries of former members of the sellers."

Let it be remembered that members of the local lodge No. 2144 were not compelled to belong to the Endowment division. This is a separate organization and is incorporated. The Household of Ruth No. 13 is a division of the lodge system to which women may belong.

It is apparent that the men who belonged to local lodge No. 2144 were not compelled to belong to the Household of Ruth. It is apparent that those who chose to do so could belong to local lodge No. 2144 and remain in good standing as Oddfellows without enjoying the benefits of or becoming obligated to the District Grand Lodge Endowment of District Grand Lodge No. 25, or to District Household of Ruth No. 13.

But it is made apparent from the undisputed evidence that District Grand Lodge No. 25 is attempting to sell and convey the property purchased by the members of local lodge No. 2144 to satisfy the debts owing to members with claims and beneficiaries of former members who belonged to "District Grand Lodge Endowment of District Grand Lodge No. 25", and to "District Household of Ruth No. 13."

We fail to find where the Grand Lodge that blew the breath of life into the District Grand Lodge No. 25, and which dissolved it through proper agency and proceedings, ever gave authority or power to the District Grand Lodge No. 25 to revoke the charter or ultimately suspend any local lodge; and we fail to find authority in such District Grand Lodge No. 25 to revoke the charter or cause the ultimate suspension or "demise" of any local lodge for failure to pay dues.

The constitution of the Grand Lodge does not delegate any such authority to a District Grand Lodge, and if any suspension be undertaken it does not become effective until the so called "Sub-committee of Management" in Philadelphia—an arm of the Parent or Grand Lodge—approves the suspension.

The undisputed evidence shows that such Sub-committee has not suspended Local Lodge No. 2144, and that it has been in good standing from its creation in 1880 up to and until the trial of this case.

It appears to us that the particular by-laws under which these plaintiffs claim they derive title to the property in controversy were not contained in the constitution provided for by the Supreme Lodge for District Grand Lodges, nor did the Grand or Supreme Lodge delegate to any District Grand Lodge any such authority, and it is not shown that such by-laws were approved by the Sub-committee of Management, as the general laws of the Supreme Lodge provide.

We find no proof in the record that District Grand Lodge No. 25 was ever incorporated, and any attempt to hold the property under the provisions of Articles 1402 and 1403 R.C.S. do not apply for that reason. But it further appears to us that the very language of the statutes referred to shows that if there could be a reverter of title—that is to say, a passing of title from the subordinate lodge by reason of its "demise"—it must be to "the grand body to which [it] is attached".

Most certainly this local lodge was "attached" to the Grand Lodge that gave it life and not to the agency of such Grand Lodge, to-wit, the District Grand Lodge that came into being at approximately the date of the creation of the local lodge, and

which agency has been dissolved by the Grand or Supreme Lodge as shown above.

It also appears that the local lodge purchased the property in controversy in 1914, before the by-laws of 1917, on which plaintiffs rely, were adopted, and that a part of the purchase price was paid from a sale of other property the local lodge had bought many years before.

We do not believe that the plaintiffs below—appellants here—have raised any issue of fact tending to show title vested in them. The cause being tried to a jury, a peremptory instruction was given to find for the defendant, and judgment followed.

For the reasons stated and under the facts found, the judgment of the trial court is affirmed.