**OLD NAT. LIFE INS. CO. v. JERUSALEM LODGE NO. 67, FREE & ACCEPTED MASONS et al.**

No. 2648.

Court of Civil Appeals of Texas. Waco.

Nov. 23, 1945.

Rehearing Denied March 7, 1946.

922

Barney A. Garrett, of Waco, for appellant.

Tyson, Dawson & Dawson and Ed Roy Simmons, all of Corsicana, for appellees.

TIREY, Justice.

This is a formal suit of trespass to try title, Rule 783, Texas Rules of Civil Procedure, to lot 1 in Block 105 of the Houston & Texas Central Railroad Addition to the City of Corsicana, Navarro County, Tex. Plaintiff brought the suit against Jerusalem Lodge No. 67 (Negro), Free & Accepted Masons (unincorporated), Ben Morgan, Worshipful Master, and F. M. Nelson, L. E. Lister, W. M. Buchanan, Robert Jewell, James Edwards, R. H. Durham and W. M. Rogers, as former members of the Lilly of

the Valley Lodge No. 1933 (Negro), Grand United Order of Odd Fellows of Texas, as a class representing all former members similarly situated. Plaintiff specially pleaded that it had title to all of the property in controversy by virtue of the three, five and ten year statutes of limitations. Arts. 5507, 5509 and 5510, Rev.Civ.Stats. Jerusalem Lodge and Lilly of the Valley Lodge each entered a plea of not guilty, and in addition thereto specially pleaded that each had title to one-half of the property in controversy by virtue of said statutes of limitations, supra. By cross-action each defendant asked for relief in formal suit of trespass to try title. At the conclusion of the evidence all parties filed motions for instructed verdict. The court denied plaintiff's motions and granted defendants' motions, and plaintiff excepted.

A comprehensive statement is necessary. Prior to September 10, 1880, all of the Negro Odd Fellow lodges in Texas organized themselves into a district grand lodge and secured from the Sub-Committee of Management a charter which recognized said organization as District Grand Lodge No. 25, Grand United Order of Odd Fellows of Texas. Said Grand Lodge was an unincorporated fraternal benefit society and it adopted a constitution and by-laws in the year 1898 for its government. The certificate to the constitution and by-laws tendered in evidence certified in effect that such constitution and by-laws, with amendments thereto, were revised and duly adopted by District Grand Lodge No. 25 at the annual session held during the month of August, 1917, and further certified in effect that the same had been in full force and effect since the adoption in 1917, and that there were no amendments from August, 1917, up until the date of the certificate, which was the 12th of September, 1939. The constitution and by-laws of the Grand Lodge tendered in evidence contain Article 10, which article and provisions pertinent here are set out in the opinion of the Supreme Court in the case of District Grand Lodge v. Jones, 138 Tex. 537, 160 S.W.2d 915, and said constitution and by-laws in evidence here are also the same as the ones discussed in Modern Mutual Health & Accident Ins. Co. v. Freeman, Tex.Civ. App., 151 S.W.2d 240, writ dismissed correct judgment. See also Simpson v. Charity Benev. Ass'n, Tex.Civ.App., 160 S.W.2d 109, writ dismissed W.O.M.; Old National Life Ins. Co. v. Guest, Tex.Civ.App., 163 S.W.2d 241, writ dismissed W.O.M.; Frierson v. Modern Mutual Health & Accident Ins.Co., Tex.Civ.App., 172 S.W.2d 389, writ dismissed W.O.M. Evidence was tendered by appellant to the effect that Article 10 was in force and effect as a provision of the constitution and by-laws of said Grand Lodge in 1898, and that such provision had remained in force since its adoption. This testimony was not denied. It is true that the Grand Secretary of the parent body at Philadelphia testified by deposition to the effect that Article 10 of the Constitution and By-Laws of District Grand Lodge No. 25 was never approved by the Committee of Management or Sub-Committee of Management of the "Grand United Order of Odd Fellows in America and Jurisdiction." The booklet containing the general laws now in force for the governing of the "Grand United Order of Odd Fellows in America and Jurisdiction," the parent organization, was tendered in evidence, and sections 5 and 7 of Article 2 thereof are as follows:

"Sec. 5. In the District Grand Lodge is vested the power of government and superintendence of the subordinate lodges within its jurisdiction, in accordance with the General Laws and Regulations of the Grand United Order of Odd Fellows and subject to the supervision and control of the Committee of Management."

"Sec. 7. The jurisdiction of the District Grand Lodge shall be coextensive with the State, Territory, Province, or Island in which the same is created or formed. It shall have no right to interfere with any Lodge not within its jurisdiction, and it shall be the duty of the District Grand Lodge to see that the General Laws of the Order are enforced and are in no way transgressed or disobeyed, either by its own body or any member thereof or by any Lodge under its jurisdiction, and to protect every Lodge and all members in their just rights."

Lilly of the Valley Lodge, acting through its trustees, acquired the property in question from the agreed common source of title by general warranty deed dated February, 1904, and all of the consideration was paid by the local lodge. This deed recites in effect that the consideration was paid by the Trustees of Lilly of the Valley Lodge, acting for said Lodge, but was conveyed to said Lilly of the Valley Lodge No. 1933, Grand United Order of Odd Fellows of the County of Navarro, State of

Texas, its successors and assigns forever. It is without dispute that said Grand Lodge was operating under Chapter 8 of Title 78 of Rev.Civ.Stats. of 1925, Vernon's Ann. Civ.St. art. 4820 et seq.; and the various annual licenses obtained by said lodge from the Insurance Commissioner were tendered in evidence, the first one being for the year ending March 31, 1915, and the last one being for the year ending March 31, 1938. In August, 1935, Lilly of the Valley Lodge (without permission of the Grand Master), pursuant to resolution passed at a meeting of the local lodge, and for a consideration of $727.45, executed a deed to a one-half interest in the property in question to Jerusalem Lodge. This deed, among other things, provided that the one-half interest covered a one-half interest in the hall and fixtures. Jerusalem Lodge has had joint use and possession of said property with Lilly of the Valley Lodge from the date it acquired its one-half interest therein.

Appellant contends substantially that the court erred in its failure to grant its motions for instructed verdict against each defendant and in granting each of defendant's motions for instructed verdict against it, because the evidence shows without dispute that Lilly of the Valley Lodge was a subordinate lodge of the Grand Lodge, and that by virtue of the provisions of Article 10 of the Constitution and By-Laws of the Grand Lodge and by reason of the doctrine announced in the Jones case, supra, an unrecorded express trust was created and impressed upon the land in favor of said Grand Lodge as against Lilly of the Valley Lodge and its members, and that Jerusalem Lodge had notice that neither Lilly of the Valley Lodge nor its officers had the power to convey said property, and that Jerusalem Lodge was not an innocent purchaser of the property for value without notice; and since Lilly of the Valley Lodge was the common source of title and said property could be conveyed only by the written consent of the District Grand Master (which was not obtained), and since appellant had acquired title to said property through mesne conveyances from the Grand Lodge, the trial court erred in refusing appellant's motions for verdict, and likewise erred in granting each of defendant's motions for instructed verdict against appellant. We sustain these contentions.

After a most careful consideration of the opinion in the Jones case, supra, it is our opinion that the rule announced in the Jones case is applicable to the factual situation in the case at bar.

Sections 1 and 2 of Article 10 of the Constitution and By-Laws provide:

"Sec. 1. The title to all property, real, personal or mixed acquired by any subordinate lodge or Household of Ruth, by purchase, gift, devise or otherwise, shall be acquired by such subordinate Lodge or Household of Ruth as trustee for the District Grand Lodge No. 25, Grand United Order of Oddfellows; and, the same shall be held in trust by such subordinate lodge or Household of Ruth for the benefit of the District Grand Lodge, so long as such subordinate lodge or Household of Ruth is alive and has complied with the rules, regulations and laws of the District Grand Lodge."

"Sec. 2. No property held by any subordinate lodge or Household of Ruth of the District Grand Lodge No. 25, Grand United Order of Oddfellows shall ever be mortgaged, sold, or encumbered in any manner, by the officers or members of such subordinate lodge, or Household of Ruth, without the written permission and consent of the Grand Master of the District Grand Lodge."

■■■ It is clear that under the provisions of Section 1 that Lilly of the Valley Lodge held the legal title to the property in trust for District Grand Lodge No. 25, and it had the right to so hold it as long as it was alive and complied with the rules, regulations and laws of the District Grand Lodge. Did it violate such rules, regulations and laws of the District Grand Lodge and thereby breach the duty it owed as trustee to said Grand Lodge? We think it did. Section 2 provides that a subordinate lodge cannot sell its property without the written permission and consent of the Grand Master of the District Grand Lodge, and the evidence is without dispute that Lilly of the Valley Lodge did sell, without permission of the Grand Master, a one-half interest in its property to the Negro Masonic Lodge, as evidenced by deed dated in August, 1935.

■ The next question that arises is: Is appellant entitled to recover the property in a formal action of trespass to try title? We think so. For general rule see 41 Tex. Jur. § 78, pp. 557, 558; Id., § 15, p. 470; 42 Tex.Jur. 774, § 153; Binford v. Snyder, Tex.Sup., 189 S.W.2d 471, 473. It is well settled in Texas "'that in an action of tres-

pass to try title, in which the petition of plaintiff is in the statutory form and the answer of defendant a plea of not guilty, equitable relief cannot be obtained by either party,' has no application to a case like this where no equitable relief is sought, but where plaintiff's right of recovery is simply based upon an equitable title to the land. The authorities fully sustain the proposition 'that an action of trespass to try title, brought in the ordinary form, may be maintained on an equitable title.' Easterling v. Blythe, 7 Tex. 210, 56 Am.Dec. 45; Martin v. Parker, 26 Tex. [253], 254; Hill v. Moore, 62 Tex. 610; Hardy v. Beaty, 84 Tex. 562, 19 S.W. 778, 31 Am.St.Rep. 80; Mason v. Bender, Tex.Civ.App., 97 S.W. 715; Tompkins v. Broocks, Tex.Civ.App., 43 S.W. 70; Betzer v. Goff, 35 Tex.Civ. App. 406, 80 S.W. 671." See Roth v. Schroeter, Tex.Civ.App., 129 S.W. 203, 205, writ refused. The reason for the rule is stated clearly in Mason v. Bender, writ refused supra [97 S.W. 718]: "A right recognized by the law would be unavailing, if no remedy were given to enforce it, for a right which the law refuses to enforce is tantamount to no right at all. Does the law of this state give, as a remedy, the action of trespass to try title to one who has the right of possession to lands? The remedy of trespass to try title is given in all cases where the right, or title, or interest and possession of land may be involved." In Pegues v. Moss, Tex.Civ.App., 140 S.W. 2d 461, 471 (writ dismissed by agreement), we find this statement: "An equitable title is the present right to the legal title. * * * Such an equitable title is available in the statutory action of trespass to try title."

Appellees attach great importance to the fact that they tendered evidence from the Grand Secretary of the parent body to the effect that Article 10 of the Constitution and By-Laws of the District Grand Lodge No. 25, under consideration, was never approved by the Committee of Management of the parent organization and by reason thereof Article 10 was of no effect. We are not in accord with this view. This record is without dispute that Article 10 of said Constitution was adopted by District Grand Lodge No. 25 in 1898 and that it had been in force and effect since its adoption. "It has been frequently held, however, that, when the evidence of an interested witness is direct and positive on the point at issue, and where there are no circumstances in the record tending to discredit or impeach his testimony, a verdict contrary thereto will be set aside, that such testimony will justify an instructed verdict, and that a judgment contrary thereto may be reversed and rendered." Dunlap v. Wright, Tex.Civ.App., 280 S.W. 276, 279, point 6. It is also without dispute that Lilly of the Valley Lodge was a subordinate lodge of District Grand Lodge No. 25, and since said District Grand Lodge and Lilly of the Valley Lodge were operating under the provisions of Article 4820, R.C.S., Vernon's Ann.Civ.St., and were subject to the provisions of Chapter 9 of Title 32, R.C.S. (under the doctrine announced in the Jones case), we think that the failure or refusal of the Committee of Management to approve or disapprove the provisions of Article 10 of said By-Laws aforesaid would be of no importance in the disposition of this case, because in the Jones case our Supreme Court said in part [138 Tex. 537, 160 S.W.2d 921]: "The property so acquired by the local lodge becomes impressed with the group purpose of a fraternal benefit society. Upon demise of such lodge the way to keep it so impressed is certainly not by deeding it to the surviving members to enjoy according to their individual desires, but can be achieved only by giving it to the central state organization, the grand lodge, for disposition in accordance with its rules and the general law governing it. The statute in question accomplishes that. See Minor v. St. John's Union Grand Lodge, 62 Tex.Civ.App. 100, 130 S.W. 893, error refused." It is true that in the case at bar we do not have a factual situation where the local lodge had demised, as was the case under the agreed statement in the Jones case; however, it is true that Lilly of the Valley lodge had breached its trusteeship by a sale of a one-half interest in its property to the Jerusalem Lodge without having obtained the written permission of the Grand Master of District Grand Lodge No. 25, and unless the Grand Lodge sought to enforce such trust, limitation would begin to run against appellant as soon as notice of such breach was brought home to it. As we understand the Jones case, our view is that when a fraternal benefit organization operates under the supervision or control of a grand body, as did Lilly of the Valley Lodge in the instant case, we think such local lodge and its members come within the rule of law announced in the Jones case, and the fact that the grand parent body in Philadelphia had or

had not approved the constitution and by-laws of the Grand Lodge under which it operated would be of no avail. If appellees' position in the foregoing respect were the rule, our Legislature would be impotent to control fraternal benefit societies operating in Texas. Hardy v. Beaty, 84 Tex. 562, 19 S.W. 778, 31 Am.St.Rep. 80. When the provisions of Chapter 8 of Title 78, R.C.S., and Chapter 9 of Title 32, R.C.S., supra, are carefully read in connection with the opinion in the Jones case, the views here expressed become obvious. Nor do we think such views are in conflict with the views expressed in Modern Mutual Health & Accident Insurance Co. v. Freeman, supra. In that case the court said [151 S.W. 2d 242]: "There is no showing that the constitution and by-laws of the Grand Lodge, if any, existing at the time of the acquisition of the property by Guadalupe Lodge * * * contained a provision which would place the beneficial title to the property in the Grand Lodge." In the case of Simpson v. Charity Benevolent Association, supra [160 S.W.2d 113], the court said: "It also appears that the local lodge purchased the property in controversy in 1914, before the by-laws of 1917, on which plaintiffs rely, were adopted * * *." Such finding of fact by the courts of civil appeals in each of the foregoing cases is in itself sufficient to distinguish each of these cases from the rule announced in the Jones case, as well as here. Nor do we think our view is in conflict with the case of Old National Life Insurance Company v. Guest, supra. In the Guest case the local lodge acquired the property through its trustees by deed dated April 9, 1884, and the constitution and by-laws upon which the insurance company relied were amended and adopted in 1917, and there was no evidence as to the provisions of the constitution and by-laws in force and effect at the time the lodge acquired the property. In addition thereto the defense was tendered on behalf of defendants and evidence introduced thereon to the effect that True Friend Lodge was not a subordinate lodge and was not operating under or controlled by the constitution and by-laws of District Grand Lodge No. 25. The court said [163 S.W.2d 244]: "Appellant did not request the District Court to file findings of fact and conclusions of law, and none appear in the record; so it must be presumed that the trial court made all findings favorable to the judgment which would have support in the evidence, and the judgment should be affirmed if it is properly supported by any reasonable grounds presented in the record." The distinction between the Guest case and the Jones case, as well as the case here, becomes obvious.

■ But appellees contend that Jerusalem Lodge was an innocent purchaser of a one-half interest in the property for value without notice. We overrule this contention. Since it is without dispute that Lilly of the Valley Lodge was a subordinate lodge of District Grand Lodge No. 25 and that said Lodge was an unincorporated fraternal benefit society operating under the provisions of Arts. 4820 et seq. R.C.S., supra, the provisions of Chapter 9, Title 32, R.C.S. (as we understand the Supreme Court in the Jones case, supra) are applicable to the case at bar. Article 1402, Title 32, R.C.S. provides: "Such orders, grand and subordinate, shall have the right to acquire and hold such lands and personalty as may be necessary or convenient for sites upon which to erect buildings for their use and occupancy, and for homes and schools for their widows, orphans or aged or decrepit or indigent members, and to sell or mortgage the same, such conveyances to be executed by the presiding officer, attested by the secretary with the seal. The power and authority of such subordinate bodies to sell or to mortgage shall be subject to such conditions as may be from time to time prescribed or established by the grand body to which the subordinate is attached." This statute is applicable and controlling to the factual situation here. It is obvious that while Lilly of the Valley Lodge held the record title to the property, nevertheless under the constitution and by-laws and under the doctrine announced in the Jones case, Lilly of the Valley Lodge held title to said property as trustee for the Grand Lodge, and Jerusalem Lodge had constructive notice of such relationship. (Since defendants Nelson, Lister, Buchanan and Jewell were not holding individually under a recorded deed, it is obvious that none of the statutes of limitation are applicable in their behalf as individuals).

■ But appellees contend substantially that there was such repudiation of the trust relationship by Lilly of the Valley Lodge as to invoke the five year statute of limitations. We overrule this contention. "The rule is elementary that limitation does not run against the beneficiary of a trust in favor of a trustee so long as the trustee acknowledges his interest." Long v. Mc-

Coy, Tex.Civ.App., 294 S.W. 633, point page 638, writ granted but affirmed by Tex. Com.App. in 15 S.W.2d 234. See also 42 Tex.Jur. 757, § 136; Id., § 129, p. 748. In Collins v. Griffith, Tex.Civ.App., 125 S.W. 2d 419, 425, writ refused, point 4, the court said: "In Brotherton v. Weathersby, 73 Tex. 471, 11 S.W. 505, it is said: 'The doctrine is elementary that the statute of limitations does not run against an express trust until the trustee has done some act which shows a repudiation of the trust, and which is brought to the knowledge of the cestui que trust.' See also Wilson v. Simpson, 80 Tex. 279–287, 16 S.W. 40."

 It is true that Lilly of the Valley Lodge made a request of the Grand Lodge for aid (which was refused) before it executed a deed to a one-half interest in the property to the Masons. The District Grand Master from 1931 to 1939 testified substantially to the effect that the Grand Master did not give permission to Lilly of the Valley Lodge to sell a one-half interest in the property and that he knew nothing about the sale. The Permanent Secretary, defendant Lister, testified in part: "Well, I'll tell you how that is now; when I came back from Houston (1936) I made my report to the lodge; the men didn't like the increase in premiums; * * * and we said 'we will keep up the fraternal side of our insurance and the ones that want to send in their endowment can send it,' and we held ourselves together locally, hoping some change would take place; we had three members who continued to send their endowments until this thing closed up." He said it closed in 1939. He further testified after he came back from Houston: "We had a committee in our Order to look after the rents and collect the rents; I didn't never know anything about that, I just reported it. * * * Q. You have been renting that hall all these years. A. Yes, sir. Q. And you divided that money with the Masons.' A. Supposed to have been." He further testified to the effect that he did not write the Grand Lodge about the local lodge attempting to sell a one-half interest in the property and that he had never made a report of the sale to the Grand Lodge. He further testified with reference to the Minutes in a book about which he was being interrogated: "If I understand you, I looked at the first minutes and it was written in the book here 'December 12, 1935', and the last meeting was January 6, 1944, I believe." Applying

the rule announced in Long v. McCoy, supra, and Collins v. Griffith supra, our view is that this testimony does not raise the issue of knowledge of the repudiation of the trust relation.

 Now it is without dispute that on May 21, 1939, at a meeting of the Grand Session of the District Grand Lodge, a resolution was adopted providing "for the working out of a plan of re-insurance of the policyholders with full power vested in Grand Master Ewing and Endowment Secretary J. W. Rice to work out this plan, which must have the approval of the Insurance Department." Said officials (pursuant to said resolution) thereafter executed deeds conveying their properties in Texas: (1) by deed from District Grand Lodge to District Endowment & Burial Association dated June 7, 1939, acknowledged on September 26, 1940, and recorded March 8, 1944; and (2) by deed from District Endowment & Burial Association to Modern Mutual Health & Accident Insurance Association dated July 15, 1939, acknowledged September 26, 1940, and recorded March 8, 1944. Since the record shows that Lilly of the Valley Lodge had not repudiated its trust relationship to the Grand Lodge so as to set in motion the running of the statutes of limitation under the cases above cited, and since the Grand Lodge was holding under mesne conveyances, and since the Grand Lodge was not liquidated until subsequent to May 1, 1939, and since the assignees of the Grand Lodge brought this suit in April, 1944, the provisions of the five year statute of limitations are not applicable to Lilly of the Valley Lodge, and for these reasons neither Lilly of the Valley Lodge, nor its members, can prevail in this suit. The three year statute of limitations is not applicable to any of the defendants for the reasons stated in District Grand Lodge No. 25 v. Logan, Tex.Civ. App., 177 S.W.2d 813, point 1, writ refused.

 But appellees contend in substance that since the deed from Lilly of the Valley Lodge to Jerusalem Lodge was executed in August, 1935, and recorded in July, 1936, and since plaintiff did not bring its suit until April, 1944, title to a one-half interest in the property had fully ripened in Jerusalem Lodge by virtue of the five year statute of limitations, Art. 5509, Rev. Civ.Stats. Assuming, without deciding, that the tax provision of the statute has been complied with, we cannot agree with this contention. (1) It is clear that Jeru-

salem Lodge was not an innocent purchaser for value without notice of the property because of the provisions of Article 1402, supra. See District Grand Lodge v. Jones, supra. It follows that Jerusalem Lodge had constructive notice as a matter of law of the trust relationship existing between Lilly of the Valley Lodge and the Grand Lodge. The question then arises: Is limitation available to Jerusalem Lodge? We think not. It is true that Jerusalem Lodge duly recorded its deed and openly occupied the property under the provisions of such deed for a period of more than five years before the plaintiff brought its suit, but such use and occupancy was joint with Lilly of the Valley Lodge. Our Supreme Court, in Schneider v. Sellers, 98 Tex. 380, 84 S.W. 417, point page 421, held in effect that a purchaser who had knowledge of the trust stands in no better position as to limitation than the trustee himself. See 42 Tex.Jur. § 138, p. 759. Our Supreme Court re-affirmed this doctrine in McLean v. Hargrove, 139 Tex. 236, 162 S.W.2d 954, points 6, 7, page 958. It is true that Lilly of the Valley Lodge held the legal title but under the constitution and by-laws of the Grand Lodge it was in fact a trustee, and we think it is well settled that limitation does not begin to run in favor of a trustee against a cestui que trust until the trustee repudiates such trust relationship and notice of such repudiation is brought home to the cestui que trust. 42 Tex.Jur. § 136, p. 757. (2) Did Jerusalem Lodge have adverse possession of the property as contemplated by our statutes of limitation? We think not. First of all, it acquired only an undivided one-half interest. The deed, among other things, provided: "But the exclusive right to use and occupy said lodge during meeting days and nights of the grantor (Lilly of the Valley Lodge) shall be exclusive to it, and likewise the exclusive right to use and occupy said lodge during the meeting days and nights of the grantee (Jerusalem Lodge) shall be exclusive to it; if either elects it may have such exclusive right to use said lodge room for three days and nights in each week, but Sunday nights may be used by them, either jointly or severally, or by the public, as said two lodges may agree upon. And if said lodge room is rented to be used by others, then the proceeds received therefor shall be divided equally." Testimony was tendered to the effect that Lilly of the Valley Lodge was renting the property and that it was being used by other organizations.

In Bender v. Brooks, 103 Tex. 329, 127 S.W. 168, point page 170, Ann.Cas.1913A, 559, our Supreme Court held: "In order for possession to be adverse to the true owner, it 'must be of such a character as to indicate unmistakably an assertion of claim of exclusive ownership in the occupant.' Mhoon v. Cain, 77 Tex. [316], 318, 14 S.W. 24; Bracken v. Jones, 63 Tex. [184], 186; Holland v. Nance, 102 Tex. 177, 114 S.W. 346; McCarty v. Johnson, 20 Tex.Civ.App. 184, 49 S.W. 1098." In Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226, point page 230, 136 S.W.2d 207, our Supreme Court, in quoting from the opinion in Parker v. Baines, 65 Tex. 605, said: "It is necessary, to set the statute of limitation in motion, that the possession be actual, visible, notorious, distinct and hostile." Our view is that the factual situation here does not meet this test. Under this record we have Lilly of the Valley Lodge and Jerusalem Lodge each holding the legal title to an undivided one-half interest in the property, and their possession of the property is mixed, and neither's possession is adverse to the other as contemplated by Article 5515, Rev.Civ.Stats., Wichita Valley R. Co. v. Somerville, Tex.Civ.App., 179 S.W. 671, point page 677. There is nothing in the record to indicate that Jerusalem Lodge held said property adversely to the co-tenant in common, namely, Lilly of the Valley Lodge. Moody v. Butler, 63 Tex. 210, point page 213. The rule in Texas is: "Possession in order to be adverse must be exclusive." Southwestern Lumber Co. of New Jersey v. Allison, Tex.Com.App., 276 S.W. 418, 419. "In order for one cotenant to assert the running of the statute of limitation in his favor against his cotenant, there must not only be an exclusive occupancy of the property under an adverse claim, but notice of such hostile adverse claim must in some way be brought home to the other cotenant. His occupancy even of the whole of the property will be presumed to be in recognition of the common title unless and until notice of his adverse claim is brought either to the direct attention of his cotenant or unless his acts are of such unequivocal notoriety as that the other cotenant will be presumed to have notice of such adverse holding." Wiggins v. Holmes, Tex.Civ.App., 39 S.W.2d 162, 164, writ refused. See also Viduarri v. Bruni, Tex.Civ.App., 154 S.W.2d 498, point 4 at page 501; Id., 140 Tex. 138, 166 S.W.2d 81, point 3, at page 86. Our view is that the five year statute of limitations is not avail-

able to Jerusalem Lodge and for that reason it is clear that its title must fail.

It follows that the judgment of the trial court must be reversed and rendered in favor of appellant against all defendants, and it is so ordered.

Chief Justice LESTER took no part in the consideration and disposition of this case.