**PROGRESSIVE UNION OF TEXAS et al. v. INDEPENDENT UNION OF COLORED LABORERS OF TEXAS, LODGE NO. I et al.**

No. 12630.

Court of Civil Appeals of Texas.

Galveston.

Jan. 28, 1954.

Rehearing Denied Feb. 18, 1954.

Sewall Myer and Frank Campbell Fourmy, Houston, for appellants.

F. Warren Hicks, Houston, for appellees.

HAMBLEN, Chief Justice.

This suit was brought in trespass-to-try title, for damages and for cancellation and rescission of a deed and bill of sale, both dated October 15, 1951. Plaintiffs in the trial court were Independent Union of Colored Laborers of Texas, a Corporation, and Independent Union of Colored Laborers of Texas, Lodge No. 1, an unincorporated association of individuals acting through its officers and trustees and certain of its members. Defendants were the Progressive Union of Texas, a Corporation, certain individual defendants, and the City National Bank of Houston, a national banking corporation. Trial was had before a jury and upon the verdict of the jury in response to special issues judgment was entered in favor of Independent Union of Colored Laborers of Texas, Lodge No. 1, against the Progressive Union of Texas and the individual defendants for cancellation and rescission of the deed and bill of sale and for damages. The defendant, City National Bank of Houston, was, upon motion of plaintiffs, dismissed with costs. The corporate plaintiff took nothing by the judgment.

The facts giving rise to this litigation are involved. The litigants before this Court in their respective briefs are at variance as to many of such facts. The following statement comprehending such facts as the litigants do agree upon and which are supported by the evidence is considered sufficient for our discussion:

On July 31, 1930, a charter was issued by the State of Texas to Independent Union of Colored Laborers of Texas upon the application of 17 individual incorporators. No capital stock was provided for and the purpose was described as benevolent, charitable and educational, and not for profit. So far as the record reflects, the membership in this corporation remained at 17, vacancies being filled by the remaining members as they occurred. The 17 individual members of this corporation were by the parties, and will be for brevity by this Court, referred to as the Supreme Council.

About March 19, 1935, there was organized Independent Union of Colored Laborers of Texas, Lodge No. 1, an unincorporated association described as a ritualistic, fraternal, benevolent, religious and charitable association, which for brevity will hereafter be designated as Lodge No. 1. Lodge No. 1 appears to be one of several associations which were affiliated in some manner with the Supreme Council. The exact nature of this affiliation and the extent of the jurisdiction of the Supreme Council over the affairs of Lodge No. 1 are disputed but it does appear that at the time of its organization Lodge No. 1 was furnished by the Supreme Council with a franchise or warrant purporting to authorize its organization, as well as a constitution and by-laws and a pass word. Lodge No. 1 collected dues and assessments from its members and at regular intervals paid dues to the Supreme Council. The evidence further shows that on January 23, 1939, the Supreme Council promulgated and furnished to Lodge No. 1 a new constitution and by-laws.

On March 18, 1947, Lodge No. 1 became the owner by purchase of certain real property. Thereafter, about July 16, 1948, Lodge No. 1 began the erection of improvements on such property. A debt and lien were created against the property to finance such improvements and simultaneously, on

July 16, 1948, Lodge No. 1 purported to adopt a constitution and by-laws authorizing its officers to do certain acts in connection with its property, including the authority to execute the legal documents necessary in the financing of such improvements.

The evidence shows that by September 1951 Lodge No. 1 had acquired a membership in excess of 1,000 persons, had from revenues derived from its property as well as from dues and assessments paid off all indebtedness, possessed funds in the amount of at least $8,500, and had acquired personal properties of some value.

At some time prior to September 13, 1951, a faction of the officers and members of Lodge No. 1 appeared to have resented the jurisdiction and control which the Supreme Council exercised over the affairs of the Lodge. This resentment festered and grew, culminating in a meeting held on September 13, 1951. The exact transactions which occurred at this meeting are disputed. Suffice it to say that notices sent to members of the Lodge advised that a matter of great importance would be dealt with and that at the meeting a motion was made and passed, the sense of which was that Lodge No. 1 would in some manner "shake loose" from the Supreme Council.

On October 8, 1951, a charter was issued by the State of Texas to the Progessive Union of Texas, a non-profit, no-capital stock corporation, organized under Subdivision 105 of art. 1302, Revised Civil Statutes of Texas, Vernon's Ann.Civ.St. The incorporators were each, but not all of, the officers of Lodge No. 1. On October 15, 1951, the incorporators of the Progressive Union of Texas, purporting to act as officers of Lodge No. 1, executed a deed conveying the real property of the Lodge to such corporation and a bill of sale so transferring the personalty. Funds of Lodge No. 1 in the sum of $8,500 were withdrawn from the bank account and placed in a safe deposit box available only to representatives of the corporation. The officers of Lodge No. 1, who were likewise the officers and directors of the Progressive Union of Texas, continued to conduct the affairs of Lodge No. 1 under that name through December of 1951, making reports to the Supreme Council, but from and after January 1, 1952, operated as the Progressive Union of Texas. Word of what had transpired was gotten to members of Lodge No. 1, a great majority of whom affiliated with the Progressive Union of Texas. Meanwhile, a faction of the members of Lodge No. 1, some 60 or 70 in number, continued to hold meetings separately from those conducted by the officers of Lodge No. 1 and/or the Progressive Union of Texas, contending that it was Lodge No. 1 and having no part of the Progressive Union of Texas. It is this faction which constitutes the plaintiff, Independent Union of Colored Laborers of Texas, Lodge No. 1.

At the conclusion of the evidence the jury found, in response to issues submitted, that Lodge No. 1 conducted its affairs according to the constitution and by-laws furnished by the Supreme Council; that the constitution and by-laws adopted July 16, 1948, were used and followed only for the purpose of enabling the Lodge to finance the improvements on its property; that at the meeting of September 13, 1951, a majority of the members present voted to withdraw immediately from Lodge No. 1 and from affiliation with the Supreme Council; that certain named defendants withdrew from Lodge No. 1 on October 8, 1951; that the motion passed at such meeting did not authorize the officers to execute the deed and bill of sale to the Progressive Union of Texas; that the officers of Lodge No. 1, in executing the deed and bill of sale, intended to transfer the property of Lodge No. 1 to the corporation without consideration; that such action was taken in accordance with an existing scheme between themselves; and that the rental value of the property was $225.

Appellant, the Progressive Union of Texas, and the individual appellants, base their appeal on 18 asserted points of error. None of these points, we feel, have merit and all are accordingly overruled. Due to

their number and voluminous nature, the points will be discussed together where possible.

Appellants' points Nos. 1, 6, 7, 8, 9, 13, 14 and 15 all assert the proposition that the judgment of the trial court is invalid because it affects the rights of some 900 persons representing 96% of the membership of Lodge No. 1, who were not parties to this litigation and who, it is contended, were necessary parties. These persons are individuals who did not attend the meeting of September 13, 1951, but who thereafter withdrew from Lodge No. 1 and affiliated with the Progressive Union of Texas. We see no merit in this proposition as it is variously raised in the above numbered points. It is well settled that when a person ceases to be a member of a voluntary association, his interest in its funds and property ceases and the remaining members become jointly entitled thereto, and this rule applies where a number of members secede in a body and although they constitute a majority and organize a new association. 5 C.J., page 1360, Sec. 87; 7 C.J.S., Associations, § 27; 5 Tex.Jur., page 135, Sec. 16. The case of Minor v. St. John's Union Grand Lodge of Free & Accepted Ancient York Masons of the United States of North America, Colored, of Texas, 62 Tex.Civ. App. 100, 130 S.W. 893, presents a fact situation practically identical to the facts as resolved by the jury in the present case and appears to this Court to dispose adequately of the appellants' stated contentions.

By points Nos. 2 and 11 appellants contend that the deed and bill of sale are binding because their execution was authorized by the constitution and by-laws of Lodge No. 1 adopted July 16, 1948. By Point No. 10 appellants insist that there is no evidence to support the jury's finding that the constitution and by-laws of July 16, 1948 were used and followed only for the purpose of enabling the Lodge to finance the improvements on its property. We differ with appellants on both contentions. The record contains evidence which, while disputed, is to the effect that all affairs of the Lodge, save and except only the financing of improvements, were conducted in accordance with the constitution and by-laws furnished by the Supreme Council. The July 16, 1948 constitution and by-laws were adopted simultaneously with the execution of legal documents incidental to the financing of improvements and were used only on that occasion. This evidence is sufficient, we feel, to support the jury's finding. However, aside from that question, the evidence is certainly ample to support the jury's finding that the officers of Lodge No. 1 had withdrawn therefrom prior to the date of the deed and bill of sale. It is difficult to see how such persons could withdraw as members and remain, as appellants contend, officers with power to convey the association's property even if as members and officers before withdrawing they were so empowered.

By points 3, 4 and 5 appellants complain of appellees' failure to offer to do equity to restore the status quo and to plead the absence of an adequate remedy at law. It is well settled that where, as here, consideration is entirely wanting, a conveyance will be cancelled unconditionally. 9 C.J. 1211; 12 C.J.S., Cancellation of Instruments, § 44; Johle v. Martin, Tex.Civ.App., 291 S.W. 296.

The conflict between the jury's finding that a majority at the September 13, 1951 meeting voted to immediately withdraw from Lodge No. 1, and its finding that certain named defendants who were officers of the Lodge withdrew on October 8, 1951, is of no consequence in view of the fact that either date is prior to the date of the deed and bill of sale.

Appellants' remaining points are addressed to no error which has not already been discussed, and appellants present no argument pertinent to such remaining points, and they are therefore overruled. Throughout their brief appellants have addressed their argument to a state of facts different from the facts here found

l'y the jury to exist. No useful. purpose would. be served by reviewing the arguments made and the authorities cited. They are either not factually analogous to the case at bar or do not involve the same principles of substantive law. We have undertaken to state fully the facts giving rise to this litigation. Those facts which were in dispute were, upon ample evidence, resolved by the jury against the appellants. The trial court, by its judgment, correctly applied the law to the facts thus found and that judgment is, accordingly, affirmed.

Affirmed.